**Jonathan MANZI, Appellant,**

v.

**The STATE of Texas.**

**No. 2116–01.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 23, 2002.

---

Clay S. Conrad, Houston, for Appellant.

Dan McCrory, Asst. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

*OPINION*

KELLER, P.J., delivered the opinion of the Court in which WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined.

The question presented is whether a deferential or a *de novo* review applies to a trial court's determination of historical facts when that determination is based solely upon affidavits. We hold that a deferential review applies in that situation.

**A. Background**

Appellant was charged with possession of methamphetamine with intent to deliver. He filed a motion to suppress, and as authorized by Texas Code of Criminal Procedure, Article 28.01, § 1(6),[1] the trial court resolved the motion solely on the basis of opposing affidavits from appellant and the State.[2] The parties' affidavits agreed that an informant's tip led officers to appellant's hotel room, that appellant tried to run away and was arrested as a result, that appellant gave consent to search the room for methamphetamine, and that the officers discovered methamphetamine pursuant to the search. The affidavits differed on the details surrounding appellant's giving of consent. In his affidavit, appellant claimed that the officers threatened to arrest and charge his girlfriend if he did not lead officers to the drugs. The officers' affidavits claimed that appellant originated the idea of excluding his girlfriend from any potential prosecution and that he tried to secure promises from the officers that she would not be prosecuted if he cooperated. The affidavits also disagreed over whether officers intimidated appellant with firearms during the encounter. The trial court denied the motion to suppress. Later, appellant pled guilty and appealed.

On appeal, appellant contended that the search was illegal because his consent to

---

1. The statute provides:

   Motions to suppress evidence—When a hearing on the motion to suppress evidence is granted, the court may determine the merits of said motion on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the Court.

2. Appellant offered his own affidavit while the State offered the affidavits of several narcotics officers.

search was not voluntarily given. Relying upon a statement made by this Court in *Kober v. State* that the truth of an affidavit "is a question of historical fact to be determined by the trial court"[3] and on "the traditional inability of an appellate court to find facts," the Court of Appeals held that it must give almost total deference to the trial court's resolution of the historical facts, even though the trial court resolved those facts solely upon the affidavits submitted.[4] The Court of Appeals then reviewed the merits of appellant's claim and, after resolving disputed issues of historical fact in the State's favor, held that the consent to search was voluntary.[5]

On discretionary review, appellant contends that the Court of Appeals erred in using a deferential, rather than *de novo,* standard of review of the historical facts. He contends that, without live testimony, the trial court was in no better position to resolve the credibility of the witnesses than an appellate court.[6] Appellant further contends that courts of appeals are better decisionmakers than trial courts on affidavit-only records because "three heads are better than one" and because appellate courts have an advantage due to their ability to engage in a "deliberative process."

## B. Analysis

In *Kober,* Cardenas, a prospective witness, made statements to the police and the prosecutor that incriminated the defendant.[7] In light of these statements, the defendant pled nolo contendere.[8] In support of a motion for new trial, he introduced an affidavit from Cardenas in which she claimed her previous statements were untrue and were the result of coercion by the police.[9] In citing the standard of review set out in *Guzman v. State,*[10] we stated that: "Whether Cardenas' affidavit denying that she witnessed a murder is true is a question of historical fact to be determined by the trial court. Further, the trial court was in a position to evaluate the credibility of the prosecutor and defense trial counsel concerning their testimony during the motion for new trial hearing."[11] Later in the opinion, we discussed the reasons the trial court could disbelieve the affidavit: (1) Cardenas' refusal to testify at the motion for new trial hearing and (2) the prosecutor's testimony, which indicated that Cardenas made statements to the prosecutor that were inconsistent with the statements made in her affidavit, that Cardenas did not appear to be afraid of the law enforcement officials with whom she talked, and that Cardenas had consistently repeated her earlier story. While our language in *Kober* did indicate that the truthfulness of affidavits could be considered as a question of historical fact to be resolved with deference to the trial court, the opinion made clear that there were a number of factors extrinsic to the affidavit that called the affidavit's truthfulness into

---

3. 988 S.W.2d 230, 233 (Tex.Crim.App.1999).

4. *Manzi v. State,* 56 S.W.3d 710, 716 (Tex. App.-Houston [14th Dist.] 2001).

5. *Id.* at 716–719.

6. Appellant does not raise a ground claiming that the trial court erred in conducting the motion to suppress hearing solely by affidavits. Nor does he complain about the trial court's failure to issue findings of fact even though such findings were requested.

7. 988 S.W.2d at 231.

8. *Id.*

9. *Id.*

10. 955 S.W.2d 85 (Tex.Crim.App.1997).

11. *Kober,* 988 S.W.2d at 233.

question—including live testimony, for which credibility determinations could readily be made. *Kober* is not squarely on point because there, unlike in the present case, the trial court did not make its determination based solely upon affidavits.

Nevertheless, the Court of Appeals is correct to refer to appellate courts' traditional inability to find facts. Our decision in *Guzman*, in which we held that a *de novo* standard of review applied to many application-of-law-to-fact questions, implicitly recognized that a trial court's rulings on questions of purely historical fact have traditionally been given deference even absent credibility determinations: "Our decision also is meant to reaffirm the longstanding rule that appellate courts should show almost total deference to a trial court's findings of fact *especially* when those findings are based on an evaluation of credibility and demeanor." [12] "Especially" does not mean "only." Affording deference to a trial court's credibility determinations may be more critical—thus "especially"—but the fact remains that it is traditionally the role of the trial court to resolve issues of historical fact, whether or not credibility and demeanor determinations are involved.

It is true that *Guzman* focused on the need to defer to a trial court's determinations of credibility and demeanor and observed that the amount of deference given to mixed questions of law and fact often turn upon which actor is in a better position to decide the issue, but those pronouncements were made in the context of a case in which the key issue was how to

decide certain application-of-law-to-fact-questions. [13] *Guzman* did not purport to hold that historical fact issues could be reviewed *de novo* if credibility and demeanor considerations were absent.

Moreover, *Guzman* relied heavily on United States Supreme Court precedent, [14] and the Supreme Court has spoken on this issue. In *Anderson v. Bessemer City*, the Supreme Court held that appellate courts should review a trial court's determination of historical facts under a deferential standard, even if that determination was *not* based upon an evaluation of credibility and demeanor:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.* [15]

The Supreme Court argued that there were good reasons for giving the trial court deference on the facts, even absent credibility determinations:

> The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility.

---

**12.** 955 S.W.2d at 89 (emphasis added).

**13.** *Id.* at 87.

**14.** *Id.* (citing *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) and *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

**15.** *Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 573–574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (emphasis added).

The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the courts of appeals would very likely only contribute negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. As the Court has stated in a different context, the trial on the merits should be "the 'main event'... rather than a 'tryout on the road.'" [Citation omitted]. For these reasons, review of factual findings under the clearly erroneous standard—with its deference to the trier of fact—is the rule, not the exception.[16]

We agree with the Supreme Court's analysis of the issue. Trial courts are the traditional finders of fact, and their determinations of historical fact are entitled to deference. The Court of Appeals correctly employed a deferential standard of review of the trial court's resolution of the historical facts from conflicting affidavits. The judgment of the Court of Appeals is affirmed.

WOMACK, J., filed a concurring opinion in which JOHNSON, J., joined.

COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.

MEYERS, J., filed a dissenting opinion in which PRICE, J., joined.

WOMACK, J., filed a concurring opinion, in which JOHNSON, J., joined.

The Court holds, "The Court of Appeals correctly employed a deferential standard of review of the trial court's resolution of the historical facts from conflicting affidavits."[1] My understanding of this holding is that it does not decide (1) whether the Court of Appeals employed the correct standard, or (2) whether a trial court would err by resolving factual issues like the ones in this case when a party objected.

### I.

Saying that the Court of Appeals "correctly employed *a* deferential standard of review" is not the same as saying that it employed *the correct* deferential standard of review. My understanding that the Court says the former, but not the latter, is bolstered by the first paragraph of its opinion:

"The question presented is whether a deferential or a *de novo* review applies to a trial court's determination of historical facts when that determination is based solely upon affidavits. We hold that a deferential review applies in that situation."[2]

I take our decision to go no further than the choice of deference over *de novo*.

The court of appeals' standard was "almost total deference to the trial court's resolution of the historical facts."[3] This is the same standard that we apply to findings that the trial court makes from testimony. We may have to decide, in the future, whether another, deferential standard applies to findings that are based on affidavits. As does the Court, I find the

---

**16.** *Id.* at 574–575, 105 S.Ct. 1504 (ellipsis in original).

**1.** *Ante,* at 241.

**2.** *Id.,* at 241.

**3.** *Id.* at 242.

decisions of the federal courts to be instructive.

The Supreme Court decision in *Anderson v. City of Bessemer City*,[4] on which the Court relies today,[5] is inadequate to resolve the issue for us because we do not have the rule of procedure that the federal courts do. *Anderson* construed a rule. The decision to defer to findings of fact that are based on documentary evidence, rather than to find the facts *de novo*, was made when the rules was adopted, not in *Anderson*. *Anderson* states some, but not all, of the arguments that prevailed when the rule was adopted.

### A. Federal Rule of Civil Procedure 52(a), 1938–1984.

In 1938 Federal Rule of Civil Procedure 52(a) was adopted. The relevant sentence read, "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." According to Professors Wright and Miller, the most important purpose of that sentence was to allow federal appellate courts to do *any* review of fact findings in cases at law. The drafters also set a standard of review, and they chose the one that was used in equity cases.

> The provision in Rule 52(a) stating that findings of fact shall not be set aside unless clearly erroneous represents a statement of what was considered to be the federal equity practice in the years just prior to the merger of law and equity. Before that merger the scope of appellate review turned on whether an action was at law or in equi-

ty. The Seventh Amendment bars appellate review of facts found by a jury in actions at common law and it had been held that the same bar to review applied in legal actions in which jury trial was waived. Equity practice had departed from the broad de novo review of ancient chancery and the rule had developed that the findings of the trial court had great weight with the appellate court but were not conclusive.

> The Advisory Committee deemed it desirable to have a single standard of review for all actions tried to the court, whether historically legal or equitable. A majority of the Committee preferred the broader equity review to the narrower review at law, although the Committee was not unanimous on this point. Early drafts undertook to state the scope of review by simple reference to equity practice, but this was abandoned, quite likely because there was considerable uncertainty about precisely what the equity practice was. Instead the rule as adopted states the "clearly erroneous" test.[6]

For 45 years after the adoption of the rule, including the time when *Anderson* was litigated, there developed "confusion and conflicts among the circuits as to the standard of appellate review of findings of fact by the court, [and] disparity between the standard of review as literally stated in Rule 52(a) *and the practice of some courts of appeals.*"[7]

> Some courts of appeal have stated that when a trial court's findings do not rest on demeanor evidence and evaluation of a witness' credibility, there is no

---

4. 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

5. *See ante,* at 243–44.

6. CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 9A FEDERAL PRACTICE AND PROCEDURE § 2571 (2d ed.1994) (footnotes omitted).

7. Advisory Committee Comments to 1985 Amendments.

reason to defer to the trial court's findings and the appellate court more readily can find them to be clearly erroneous.

Others go further, holding that appellate review may be had without application of the "clearly erroneous" test since the appellate court is in as good a position as the trial court to review a purely documentary record.

A third group has adopted the view that the "clearly erroneous" rule applies in all nonjury cases even when findings are based solely on documentary evidence or on inferences from undisputed facts.

The commentators also disagree as to the proper interpretation of the Rule. Compare Wright, The Doubtful Omniscience of Appellate Courts, 41 Minn. L.Rev. 751, 769–70 (1957) (language and intent of Rule support view that "clearly erroneous" test should apply to all forms of evidence), and 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2587, at 740 (1971) (language of the Rule is clear), with 5A J. Moore, Federal Practice P 52.04, 2687–88 (2d ed. 1982) (Rule as written supports broader review of findings based on non-demeanor testimony).

The Supreme Court has not clearly resolved the issue.[8]

Professor Wright's view was that the original version of Rule 52(a) clearly required deference to findings, whether made on documentary evidence or on oral testimony. He pointed out, "In 1948, in the leading case on Rule 52(a), the Court said that the 'clearly erroneous' test is applicable to 'inferences drawn from documents or undisputed facts' and it has re-

stated that position several times," in cases before *Anderson.*[9]

What was clear to Professor Wright being evidently unclear to others, action was taken in 1985 on two fronts. One was by amendment to the rule, and the other was in *Anderson.*

## B. *Anderson*

The passage from the *Anderson* opinion that the Court quotes today does not mention two things that I think are significant. One is the *Anderson* Court's statement that, while *de novo* review of documentary evidence might be a good thing, Rule 52(a) does not allow it. The other is that the *Anderson* Court specifically recognized that findings on oral testimony are entitled to greater deference than findings on written evidence.

*Anderson* was an equal-employment-opportunity suit in which the issue was whether the court of appeals had correctly applied the "clearly erroneous" standard of review. The Supreme Court held that the court of appeals had erred in conducting a *de novo* review of documentary and oral evidence. Its opinion first set out the rules that should be followed for review of written and oral evidence. Then it applied the rules. It discussed the oral testimony to which the court of appeals failed to give proper deference but I cannot tell from the opinion what the written evidence was. The court of appeals' opinion does not identify it either, and it says nothing about a different standard for written evidence.

For the reader's convenience, here is the entire passage from *Anderson* that set out the standards:

---

8. *Id.* (case citations omitted).

9. CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *supra* note 1, at § 2571 (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 394, 68

S.Ct. 525, 92 L.Ed. 746 (1948), and citing, among others, *United States v. Singer Mfg. Co.,* 374 U.S. 174, 194 n. 9, 83 S.Ct. 1773, 10 L.Ed.2d 823 (1963)).

The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123[, 89 S.Ct. 1562, 23 L.Ed.2d 129] (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.*, 338 U.S. 338, 342[, 70 S.Ct. 177, 94 L.Ed. 150] (1949); *see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).

This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts. To be sure, various Courts of Appeals have on occasion asserted the theory that an appellate court may exercise de novo review over findings not based on credibility determinations. *See, e.g., Orvis v. Higgins*, 180 F.2d 537 (C.A.2 1950); *Lydle v. United States*, 635 F.2d 763, 765, n. 1 (C.A.6 1981); *Swanson v. Baker Industries, Inc.*, 615 F.2d 479, 483 (C.A.8 1980). This theory has an impressive genealogy, having first been articulated in an opinion written by Judge Frank and subscribed to by Judge Augustus Hand, *see Orvis v. Higgins, supra*, but it is impossible to trace the theory's lineage back to the text of Rule 52(a), which states straightforwardly that "findings of fact shall not be set aside unless clearly erroneous." That the Rule goes on to emphasize the special deference to be paid credibility determinations does not alter its clear command: Rule 52(a) "does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous." *Pullman–Standard v. Swint*, 456 U.S. [273], at 287[, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ].

The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. As the Court has stated in a different context, the trial on the merits should be "the 'main event' ... rather than a 'tryout on the road.'" *Wainwright v. Sykes*, 433 U.S. 72, 90[, 97 S.Ct. 2497, 53 L.Ed.2d 594] (1977). For these reasons, review of factual findings under the clearly-erroneous standard— with its deference to the trier of fact—is the rule, not the exception.

When findings are based on determinations regarding the credibility of wit-

nesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. *See Wainwright v. Witt,* 469 U.S. 412[, 105 S.Ct. 844, 83 L.Ed.2d 841] (1985). This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination. *See, e.g., United States v. United States Gypsum Co., supra,* 333 U.S., at 396[, 68 S.Ct. 525]. But when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error. *Cf. United States v. Aluminum Co. of America,* 148 F.2d 416, 433 (C.A.2 1945); *Orvis v. Higgins, supra,* at 539–540.

It seems to me that the last paragraph from *Anderson,* above, is similar to our opinion in *Guzman v. State.*[10] Today we say, "Guzman did not purport to hold that historical fact issues could be reviewed *de novo* if credibility and demeanor considerations were absent."[11] While that is true, it is also true that Guzman did not purport

to hold that the same standard of almost total deference should apply when credibility and demeanor considerations were absent.

### C. 1985 Amendment of Rule 52(a)

The other federal action that was taken in 1985 was to add to Rule 52(a) the italicized words: "Findings of fact, *whether based on oral or documentary evidence,* shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

The advisory committee's stated reasons for choosing to apply the "clearly erroneous" standard to findings that are based on documents were:

> The principal argument advanced in favor of a more searching appellate review of findings by the district court based solely on documentary evidence is that the rationale of Rule 52(a) does not apply when the findings do not rest on the trial court's assessment of credibility of the witnesses but on an evaluation of documentary proof and the drawing of inferences from it, thus eliminating the need for any special deference to the trial court's findings. These considerations are outweighted [*sic* ] by the public interest in the stability and judicial economy that would be promoted by recognizing that the trial court, not the appellate tribunal, should be the finder of the facts. To permit courts of appeals to share more actively in the factfinding function would tend to undermine the legitimacy of the district courts in the eyes of litigants, multiply appeals by encouraging appellate retrial of some

---

**10.** 955 S.W.2d 85 (Tex.Cr.App.1997).

**11.** *Ante,* at 243.

factual issues, and needlessly reallocate judicial authority.[12]

A federal court of appeals has given another reason to justify Rule 52(a)'s policy: "The existence of any doubt as to whether the trial court or this Court is the ultimate trier of fact in nonjury cases ... impairs the confidence of ... the public in the decisions of the district courts."[13]

I offer these reasons to bolster today's decision that a trial court's findings from written evidence are entitled to deference.

## D. Federal Courts of Appeals

Lower federal courts have recognized a difference in the deference that is due to findings that are based on written, rather than oral, evidence. Examples:

Slightly broader discretion when the trial court partially relied on documentary evidence or found many facts by drawing inferences from undisputed facts.[14]

If fact-finding is based on documentary evidence alone, appellant's burden of showing clear error is not as heavy as in a case that turned on the credibility of witnesses who appeared before the judge.[15]

When the fact-findings are based in large measure on documentary evidence, they do not carry the same weight on appeal as findings based entirely on oral testimony.[16]

When the district court relied solely on documents, the burden of establishing

clear error is not so great as when the court engaged in judging witness credibility or in some other way that was in a superior vantage point, but the review is not *de novo*.[17]

One justification for this difference is the language in the rule about giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses. If there was no such opportunity, the rule may be disregarded only as to the factor of that opportunity.[18]

Today's decision that appellate courts should review such findings with deference, and not *de novo*, should not foreclose our consideration of a degree of deference that is lower than the "almost total" deference to findings from oral testimony. *Anderson* recognizes this, and gives reasons for this policy that are the same as those in our *Guzman* opinion.

## II.

It is important that the findings in this case were made without objection in a proceeding that was not required. In oral argument we learned the important fact that the trial court had a policy of not allowing oral testimony at pre-trial hearings on motion to suppress evidence. This a trial court is free to do, since Article 28.01, section 1 of the Code of Criminal Procedure expressly allows a trial court to make pre-trial findings by affidavit, or not to make them at all. The best way to

---

**12.** Advisory Committee Comments to 1985 Amendments.

**13.** *Lyons v. Board of Educ. of Charleston Reorganized School Dist. No. 1,* 523 F.2d 340, 347 (C.A.8 1975).

**14.** *Clark v. Universal Builders,* 706 F.2d 204 (CA7 1983).

**15.** *Sierra Club v. Sigler,* 695 F.2d 957 (C.A.5 1983).

**16.** *Aetna Cas. & Sur. Co. v. Hunt,* 486 F.2d 81 (C.A.10 1973).

**17.** *Hall v. National Gypsum,* 105 F.3d 225 (C.A.5 1997),

**18.** *Epperson v. Connecticut Fire Ins. Co.,* 314 F.2d 486 (CA 10 1963).

understand this case is that the trial court was, in effect, exercising its authority to hold no pre-trial hearing at all.

Such a policy involves saving judicial resources. A court must balance the time saved by not holding real pre-trial hearings against the time that would be expended if defendants were willing to plead "not guilty" in order to compel oral testimony on these issues. This is only a part of the intricate, every-day plea-bargaining in our courts, in which the courts and the prosecutors agree to lower punishments if the defendants agree to forego procedural rights. The fact that 97 per cent of Texas' felony convictions are obtained by guilty pleas [19] suggests that complete inadequacy of our judicial system to give plenary consideration to the fact issues in its cases. But a defendant who is willing to go to trial can have the factual issues determined on oral testimony; he can even have a jury determination of the issues that bear on the State's acquisition of its evidence.[20]

My Sister Cochran has explained, *post,* why the issues should not (and in other kinds of cases, may not) be decided from affidavits. If this or any other case presented an instance of a court's refusing to decide a credibility question on oral testimony, coupled with a party's inability to require such a decision in a proper proceeding, we would have to decide whether there was error.

The pre-trial statute does not foreclose such a holding. That the statute authorizes a court to make decisions on affidavits does not mean that it can make decisions of every kind on affidavits. The statute can be construed to allow some issues to be decided by written evidence when credibility determinations are not involved.

I join the Court's opinion, with the understandings I have set out.

COCHRAN, J., filed a concurring opinion, joined by JOHNSON, J.

I join the Court's opinion. I write separately to express my reservations about the propriety of resolving disputed material facts based solely upon the relative merits of conflicting affidavits. I do not know how anyone, judge or jury, can assess credibility and decide which of two sworn, conflicting versions of one event is true, based solely upon a written affidavit.

Affidavits are widely used in both criminal and civil proceedings to determine *if* there are material disputed fact issues and, if so, to define exactly what those disputed issues are.[1] When, however, one affiant says, "the light was green," while another affiant says, "the light was red," a hearing at which the witnesses testify, are cross-examined, and have their credibility

---

**19.** *See* OFFICE OF COURT ADMIINISTRATION, TEXAS JUDICIAL SYSTEM ANNUAL REPORT–STATE FISCAL YEAR 2001 84–89 (2001).

**20.** *See* TEX.CODE CRIM. PROC. art. 38.23(b).

**1.** In many instances, it is perfectly appropriate for a trial judge to rely upon affidavits in making a factual determination: when the facts set out in an affidavit are uncontradicted, *see Derby v. State,* 960 S.W.2d 274, 276–77 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd); when the facts set out in both sides' affidavits are consistent, *see id.;* when facts set out in an affidavit are contradicted by live testimony, *see Kober v. State,* 988 S.W.2d 230, 234 (Tex.Crim.App.1999), or when other physical evidence refutes the facts set out in an affidavit, *cf. Carmouche v. State,* 10 S.W.3d 323, 332–33 (Tex.Crim.App.2000) (rejecting trial court's implied finding that events occurred as claimed by ranger, when ranger's account was contradicted by "indisputable visual evidence" of a videotape). In each of these instances, there is a rational, logical and articulable basis for crediting one affidavit over another.

assessed by the factfinder is usually required.[2] As the court of appeals aptly states in this case:

> In cases where the parties are in substantial agreement on the underlying facts, the use of affidavits may be an efficient means of presenting legal issues to a court for determination prior to trial. Where critical facts are in dispute, however, such disputes are poorly resolved by the use of affidavits. The procedure permits no confrontation, no opportunity to observe, no testing by cross-examination, no inadvertent slips of the tongue, no retraction or recantation of testimony, no clarification of terms, etc.[3]

Even in civil cases, in which the penalty is measured in terms of money, rather than in terms of imprisonment, summary judgment based on sworn affidavits is appropriate only when those affidavits do not raise a disputed fact issue.[4] The federal and Texas civil summary judgment rules do not allow trial by affidavit. Rather, those rules provide a method of summarily disposing of a case that involves only a question of law and no disputed fact issues.[5] The rationale is clear: a factfinder

---

2. *See, e.g., Jackson v. State*, 877 S.W.2d 768, 772 (Tex.Crim.App.1994) (Baird, J., concurring) (noting that ineffective assistance of counsel claims are most appropriately developed "in the context of a hearing held in relation to an application for writ of habeas corpus"); *Rodriguez v. State*, 844 S.W.2d 744, 745 (Tex.Crim.App.1992) (court of appeals erred in failing to consider affidavit, attached to defendant's motion to suppress, in determining whether he had met his burden of proof regarding warrantless search and seizure); *Green v. State*, 754 S.W.2d 687, 688 (Tex.Crim.App.1988) (noting, in context of motion for new trial: " '[a]s a matter of pleading and as a prerequisite to obtaining a hearing, keeping in mind that the purpose of the affidavit requirement is to limit the parameters of the hearing that is sought, we hold that an affidavit is sufficient if it demonstrates that reasonable grounds exist for believing that jury misconduct occurred' "); *see also Herrera v. Collins*, 506 U.S. 390, 445, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (Blackmun, J., dissenting) (noting that "[i]t is common to rely on affidavits at the preliminary-consideration stage of a habeas proceeding. The opportunity for cross-examination and credibility determinations comes at the hearing, assuming that the petitioner is entitled to one. It makes no sense for this Court to impugn the reliability of petitioner's evidence on the ground that its credibility has not been tested when the reason its credibility has not been tested is that petitioner's habeas proceeding has been truncated").

3. *Manzi v. State*, 56 S.W.3d 710, 715 (Tex. App.-Houston [14th Dist.] 2001) (footnote omitted).

4. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (the summary judgment standard of review "by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor").

5. Tex.R. Civ. P. 166a(c) (summary judgment appropriate only when "there is no genuine issue as to any material fact"); *see Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952) (trial court's duty in summary judgment hearing is to determine if there are any fact issues to try, not to weigh the evidence or determine its credibility); *Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 555 (Tex.App.-San Antonio 1998, no writ) ("a summary judgment that involves the credibility of affiants will not be granted since it cannot be said that no genuine issue of fact exists"); Fed.R.Civ.P. 56; *see Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir.1994) ("[c]redibility determinations have no place in summary judgment proceedings"); *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir.1993) (holding that, in ruling on summary judgment motion, it is not appropriate for judges to make "credibility assessments of conflicting evidence").

cannot determine credibility and hence cannot decide between two conflicting versions of an event without seeing and hearing witnesses.

It seems odd, then that, in the criminal justice system, this methodology—determining the "truth" from the face of conflicting affidavits alone—is not only permitted, but widely practiced. I frankly do not understand how a trial judge can reliably determine which of two conflicting affidavits is the more truthful version of events. Should the more grammatically correct affidavit prevail? Or perhaps the more mellifluous? Or more plain-spoken? The longer narration? Or the shorter? Or, as in the medieval days of "oath-helping," does truth lie with the greater number of affidavits?[6] One hopes that an

affiant's status does not automatically determine the choice, with the defendant's version never believed and the police officer or other affiant's always believed.[7] Certainly, if an affidavit contains internal inconsistencies, important omissions, or obvious flights of fancy which are palpably incredible or patently frivolous ("A pink elephant put the packet of heroin in my pocket"), there is a rational basis for discrediting a particular affidavit. But when each affidavit offers reasonably plausible, if contradictory, versions of events, the danger of arbitrariness in choosing one over the other is great.[8]

Why, then, is this illogical method of fact-finding countenanced? Courts tolerate this imperfect methodology for the very reasons set out in the Court's opinion

6. The State argues:

> Another manner in which a trial judge may make reasonable credibility determinations on the basis of affidavits alone is when a party offers affidavits from two or more affiants. If multiple affidavits are offered and the different affiants tend to corroborate each other's story, the trial judge may reasonably assign a degree of credibility to the affiants. ... Moreover, an affidavit which offers a detailed account of an event may reasonably be interpreted as more credible than an affidavit that describes an event in vague terms.

Although the truth may lie in a headcount and in details, there is no indication in this record that the trial judge did base her factfinding on the number of police affidavits (two), versus the defendant's lone counter-affidavit or on the greater length of the police affidavits-six pages.

7. The State notes that "a criminal defendant has an inherent and obvious bias since almost any non-pleading defendant is intent on avoiding a guilty verdict. As such, a trial judge may assess the credibility of a defendant's affidavit in light of the defendant's self-preservation interest." Conversely, a police officer may have an interest in having his search or questioning techniques upheld even if his methods, in a particular case, did not pass constitutional muster. It simply cannot

be said that every criminal defendant has an inherent and obvious bias and no police officer (or other counter affiant) ever has any such bias.

8. The State argues that:

> [I]t is certainly possible that the trial judge had previous experience with the affiants, particularly the two police officers. The two officers who executed affidavits were both members of the narcotics division of the Houston Police Department. Therefore, these officers likely had been involved in prior criminal prosecutions in Harris County. As such, it is also possible that the trial judge, either in her current capacity as a trial judge and/or her previous capacity as a practitioner, had prior experience with the officers and had perceived a measure of the officers' credibility by this means. Similarly, the trial judge may have observed appellant's demeanor in prior pretrial settings and, as a result of such observations, been able to assess appellant's credibility to a certain degree.

It is also "possible" that the trial judge lives next door to the police officers or to appellant, but like the State's argument, all of this is pure speculation. Nothing in the record suggests the trial judge knew any of the affiants or had any articulable basis for crediting one affidavit over another.

in this case. First, these "paper hearings" concern only preliminary rulings or post-conviction matters.[9] They are not permitted at the main event of the trial. There, our constitutions and statutes require witnesses to appear in person and to subject themselves to confrontation and cross-examination. Second, the Texas Legislature has explicitly permitted this "dueling affidavits" process, for both pretrial and post-conviction hearings.[10]

**9.** *See United States v. Raddatz*, 447 U.S. 667, 678, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (although "the resolution of a suppression motion can and often does determine the outcome of the case .... the interests underlying a voluntariness hearing do not coincide with the criminal law objective of determining guilt or innocence").

In *Raddatz*, the Supreme Court held that the Federal Magistrates Act did not require a district court judge to rehear the live testimony and independently evaluate the credibility on which the magistrate based his findings and recommendations on a motion to suppress. *Id.* at 680–81, 100 S.Ct. 2406. As the Court noted, "A defendant who has not prevailed at the suppression hearing remains free to present evidence and argue to—and may persuade—the jury that the confession was not reliable and therefore should be disregarded." *Id.* at 678, 100 S.Ct. 2406. The interests at stake in a suppression hearing are "of a lesser magnitude" than those in the criminal trial itself. *Id.* at 679, 100 S.Ct. 2406. Furthermore, "[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *Id.*

There is, however, an important distinction between *Raddatz* and the present situation: in *Raddatz*, the magistrate heard live testimony and was therefore able to determine credibility from seeing and hearing the witnesses. The magistrate then made factual findings and recommendations to the district court which was free to exercise its discretion to conduct another hearing and view the witnesses itself. *Id.* at 680–81, 100 S.Ct. 2406. Thus, the defendant "was afforded procedures by which a neutral decisionmaker, after seeing and hearing the witnesses, rendered a decision." *Id.* at 684, 100 S.Ct. 2406 (Blackmun, J., concurring).

Justice Marshall, however, noted that "[o]ne of the most deeply ingrained principles in Anglo–American jurisprudence requires that an official entrusted with finding facts must hear the testimony on which his findings will be based." *Id.* at 695, 100 S.Ct. 2406 (Marshall, J., dissenting, joined by Brennan, J.). He stated that "judicial factfinding on the basis of a written record carries an intolerably high risk of error" and argued that "the requirement that a finder of facts must hear the testimony offered by those whose liberty is at stake derives from deep-seated notions of fairness and human dignity." *Id.* at 696–97, 100 S.Ct. 2406. These concerns, however, did not mean

> that a district judge must hear the witnesses in every case, or even in all cases in which issues of credibility are raised. An actual rehearing would be required only in cases involving case-dispositive issues that are impossible to resolve on the basis of the written record.... Neither respondent's nor the agent's story carried inherent indicia of reliability. Both accounts suffered from inconsistencies. In the end the issue was solely one of credibility. On the basis of the cold record, the District Judge had no basis for determining whether the respondent or the agents were telling the truth. He was required, therefore, either blindly to accept the Magistrate's findings as to matters of credibility or to flip a coin.

*Id.* at 698, 100 S.Ct. 2406.

**10.** *See* Tex.Code Crim. Proc. art. 11.07(d) (explicitly permitting trial judges to resolve controverted, previously unresolved facts by "affidavits, depositions, interrogatories, and hearings, as well as using personal recollection"); art. 11.071, § 9(a) (same); art. 28.01, § 1(6) ("When a hearing on the motion to suppress evidence is granted, the court may determine the merits of said motion on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court"); *but see* 40 George Dix and Robert Dawson, Texas Practice: Criminal Practice and Procedure § 4.176 at 268–70 (2nd ed.2001) (suggesting that "if the affidavits indicate that the defense has witnesses apparently able and willing to give testimony that on its face would entitle the defendant to prevail, the defendant is probably entitled to a full evidentiary hearing and the trial court would err in overruling the motion on the affidavits").

The appellant in this case argues that reviewing courts should not defer to a trial court's factual determinations based upon conflicting affidavits. There is some merit to his argument. Indeed, the reason that reviewing courts defer to the trial court's factual determinations is precisely because the judge is "Johnny-on-the-spot," personally able to see and hear the witnesses testify.[11] He makes credibility determinations, based upon demeanor, tone of voice, hesitancy of speech, perhaps the almost imperceptible shrug of shoulders, tightening of the jaw, or clench of fists. In the context of dueling affidavits, however, the trial judge is in no better position to determine the affidavit's credibility than is the reviewing court.[12] Both are looking at exactly the same evidence: a cold record, a piece of paper.[13]

Although the trial judge is in no better position to gauge the truth of an affidavit, he is in no worse position, either. Both the trial and appellate judge are making credibility decisions based upon the content of a document. Neither has a superior ability to ferret out the truth. Appellant argues that appellate courts should nonetheless conduct a de novo review of conflicting affidavits, because "three heads are better than one." But that is not necessarily accurate. Since there is no credibility decisionmaking and frequently no articulated basis for choosing one plausible version of the event over another plausible version, there is no reason to believe that three judges will divine the truth from a piece of paper any better than one—or that nine can do it better than three. In either instance, the factual determination regarding whether the light was red or green, based solely upon written affidavits, depends upon some undefinable intuitive process.

11. *See Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (explaining requirement that reviewing courts must defer to trial court findings of fact unless they are clearly erroneous and noting that "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said"); *see also Boyd v. Boyd*, 252 N.Y. 422, 429, 169 N.E. 632, 634 (1930) ("Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth .... How can we say the judge is wrong? We never saw the witnesses .... To the sophistication and sagacity of the trial judge the law confides the duty of appraisal .... His was the opportunity, the responsibility and the power to decide").

12. *See, e.g., Torrez v. State*, 34 S.W.3d 10, 13 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (noting that when suppression motion decided solely on basis of written affidavits, "the trial judge was in no better position then this court to determine the legality of the search"); *compare State v. West*, 20 S.W.3d 867, 870 (Tex.App.-Dallas 2000, pet. ref'd) (when reviewing "historical facts that the record supports, especially when the trial court's fact findings are made on the basis of an evaluation of credibility and demeanor ... we show almost total deference to the trial court's determination because of the trial court's exclusive fact finding role and because a trial court is in an appreciably better position to decide the issue").

13. Lord Coleridge waxed eloquent in ruling that a retrial should not be conducted by reading notes of the witnesses' previous testimony:

The most careful note must often fail to convey the evidence fully in some of its most important elements.... It cannot give the look or manner of the witness: his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration; ... the dead body of the evidence, without its spirit; which is supplied, when given openly and orally, by the ear and eye of those who receive it.

*Queen v. Bertrand*, 4 Moo. P.C.N.S. 460, 481, 16 Eng. Rep. 391, 399 (1867).

This procedure, albeit expressly permitted by statute and not expressly prohibited by constitution, does not inspire confidence. Trial judges who are confronted with contradictory affidavits, each reciting a plausible version of the events, ought to convene an evidentiary hearing to see and hear the witnesses and then make a factual decision based on an evaluation of their credibility. In cases where such a hearing would be impracticable, I think trial judges should place on the record their rationale for deciding, from the face of opposing affidavits, why the light was red rather than green, and why it was impracticable to conduct an evidentiary hearing.

With these comments, I join the Court's opinion.

MEYERS, J., filed a dissenting opinion joined by Price, J.

While I sympathize with Judge Cochran's point that affidavits are not the best method on which decisions are based by the trier of fact, their use is expressly allowed to determine the merits of a motion to suppress evidence. TEX.CODE CRIM. PROC. art. 28.01, § 1(6). This creates the problem of determining credibility based on merely a piece of paper. An affidavit is a sworn statement. It is a written declaration of facts to which the declarant has sworn before an officer authorized to administer oaths. This oath functions to give the document credibility and makes the declarant subject to the penalty of perjury for false statements. However, in Granados v. State, 85 S.W.3d 217 (Tex.Crim.App. 2002) (Meyers, J., dissenting), this Court intentionally removed the rules of evidence from suppression hearings. This means that Rule of Evidence 603, requiring witnesses to take an oath or affirmation, does not apply to suppression hearings. This also means that Rule 602, requiring evidence that the witness has personal knowl-edge of the matter, does not apply. As a result of Granados, the courts will see many more hearings based solely on summary reports, laboratory findings, and other unverified statements. Courts of appeals will have to review decisions that were made by the trial courts without the benefit of live testimony. Because trial judges in these situations are making decisions based only on affidavits or unverified statements and not on the credibility and demeanor of the affiant, they are in no better position to rule on the truth of these documents than would be the courts of appeals.

When a suppression hearing involves application-of-law-to-fact determinations, the trial court's fact determination is given deference if the decision was based on credibility and demeanor. In Guzman v. State, this Court said:

> As a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. The appellate courts, including this Court, should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," *if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.* The appellate courts may review *de novo* "mixed questions of law and fact" *not falling within this category.*

955 S.W.2d 85, 89 (Tex.Crim.App.1997) (emphasis added). The question in this case is an application-of-law-to-fact issue. Did appellant voluntarily give police officers consent to search his hotel room? The decision depends on which affidavit you believe. Because the determination was made solely on the basis of the affida-

vits, it was not based on the credibility and demeanor of the witnesses and thus the court of appeals should be entitled to *de novo* review. Moreover, this Court conducted a *de novo* review in Guzman but is now saying that the courts of appeals should use a deferential standard of review. The reason for *de novo* review in Guzman was that the trial court was not in a better position to review the totality of the circumstances. Similarly, in this case, the trial court was not in a better position to review the affidavits.

I do not believe that courts of appeals should necessarily apply deferential review to trial courts' fact determinations that are based on affidavits alone. Deference is given to trial courts' factual determinations because they are in a better position to evaluate the credibility and demeanor of witnesses giving oral testimony. However, when there is no oral testimony and the trial court and the court of appeals are presented with identical evidence in the form of written documents, both are equally able to judge the reliability of the evidence. A *de novo* analysis by a panel of three judges from the courts of appeals is my preference. For this reason, I respectfully dissent.