In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-025 CR


____________________



JOSHUA WAYNE REYNOLDS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 01-10-06537-CR






O P I N I O N


 Without a plea bargain, Joshua Wayne Reynolds pleaded guilty to three counts of
aggravated robbery, which were enhanced by his prior felony convictions for delivery of
a controlled substance and aggravated assault. The trial court sentenced Reynolds to thirty
years' confinement in the Institutional Division of the Texas Department of Criminal
Justice. We have jurisdiction to consider this appeal. Young v. State, 8 S.W.3d 656, 667
(Tex. Crim. App. 2000). We will affirm.

 After a series of aggravated robberies in The Woodlands area, a bank employee
reported to authorities that a suspicious car and driver was in the bank's parking lot. The
description of the driver and car matched the general description given after one of the
robberies. Law enforcement officials arrived and detained Reynolds in the parking lot for
several minutes to wait for detectives familiar with the robbery investigations. While
questioning Reynolds, Detective Chris Smith noticed panty hose under Reynolds's cap. 
The panty hose had "face mask" holes cut in it. Reynolds refused to consent to a car
search. The detectives prepared an affidavit, met with an assistant district attorney in
Conroe, and then appeared before a judge to obtain a search warrant before returning to
the parking lot for the search, a process taking approximately three hours and during which
Reynolds was handcuffed and detained in a patrol car in the parking lot. During the
search, the officers found a black handgun and arrested Reynolds for unlawfully carrying
a weapon. Under questioning at the detective's office, Reynolds admitted committing the
robberies. 

 In a sole appellate issue, Reynolds contends the trial court erred in denying his
motions to suppress. Complaining of events that occurred prior to his confession, 
Reynolds argues: (1) his continued detention was improper after the "Terry Stop" and his
subsequent refusal of consent to search, and (2) the taint of his continued detention was not
attenuated prior to his statement to officers. 

 We review a trial court's ruling on a motion to suppress evidence for an abuse of
discretion. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). "At a
suppression hearing, the trial judge is the trier of fact and assesses the witnesses'
credibility and the weight to be given their testimony. As long as they are supported by
the record, we afford almost total deference to a trial court's findings of historical fact." 
Herron v. State, 86 S.W.3d 621, 627 (Tex. Crim. App. 2002)( citations omitted). The
trial court's traditional role is "to resolve issues of historical fact, whether or not
credibility and demeanor determinations are involved." Manzi v. State, 88 S.W.3d 240,
243 (Tex. Crim. App. 2002). (1) "Furthermore, we defer to a trial court's application of law
to fact rulings if they turn on an evaluation of credibility and demeanor." Herron, 86
S.W.3d at 627. Here, the trial court made findings of fact.

 Reynolds concedes his initial detention was proper, but contends that the length of
time he was detained requires suppression of the evidence recovered from his car. 

 The reasonableness of a temporary detention must be examined in
terms of the totality of the circumstances and will be justified when the
detaining officer has specific articulable facts, which, taken together with
rational inferences from those facts, lead him to conclude that the person
detained actually is, has been, or soon will be engaged in criminal activity.

Balentine, 71 S.W.3d at 768 (citing Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App.
1997)). While the length of the detention may render a stop unreasonable, there is no
"bright line" time limit. Id. at 770. The reasonableness of the detention instead depends
on whether the officers "diligently pursued a means of investigation that was likely to
dispel or confirm their suspicions quickly." Id. 

 As found by the trial court and supported by the evidence, the officers initially
detained Reynolds based on his similarity, and that of his car, to those involved in other
robberies. While questioning him, they discovered the panty hose that could be used as
a face mask. Further, Reynolds's first name indicated involvement in the robberies as
Detective Smith had testified an individual named Joshua had attempted to cash money
orders that had been stolen during one of the previous robberies. A bank employee, who
could not remember the individual's last name, informed officials that the individual had
presented a driver's license showing his first name as Joshua. These facts, taken together
with rational inferences from them, could lead the officers to conclude Reynolds had been
or soon would be engaged in criminal activity. Further, nothing in the record shows that
the officers were not diligent in pursuing the search warrant that was necessary to either
dispel or confirm their suspicions. If Reynolds were the robber, there almost certainly
would be a handgun in his car. Thus, absent his consent to the search, his detention lasted
no longer than was necessary to determine if he was involved in the robberies. 

 Having determined that Reynolds was not improperly detained, we need not
consider whether the detention tainted his confession. The trial court did not abuse its
discretion in denying Reynold's motions to suppress. Reynold's issue is overruled. The
trial court's judgment is AFFIRMED. 

 PER CURIAM

Submitted on January 30, 2003 

Opinion Delivered February 12, 2003

Do not publish 


Before McKeithen, C.J., Burgess, and Gaultney, JJ.

1. The Manzi Court explained that its ruling in Guzman v. State, 955 S.W.2d 85
(Tex. Crim. App. 1997), "did not purport to hold that historical fact issues could be
reviewed de novo if credibility and demeanor considerations were absent." Manzi, 88
S.W.3d at 243.