

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1039-20

**Ex parte OSCAR MINJARE SANCHEZ JR., Appellant**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

**KELLER, P.J., delivered the opinion for a unanimous Court.**

Appellant was convicted of failure to stop and render aid, and he was placed on probation. He filed an Article 11.072 habeas proceeding, alleging that trial counsel was ineffective for failing to introduce testimony from passengers who were in his car at the time of the alleged offense. He provided habeas affidavits from some of the passengers. The trial court denied relief after reviewing the trial record and the habeas affidavits. In its appellate review of the trial court's determination, the court of appeals stated that a *de novo* review was appropriate because "the habeas judge was not the trial judge and there was no evidentiary hearing" and consequently, "the judge is not in an

appreciably better position than the reviewing court to resolve the matter."[1] But because a court of appeals acts solely as an appellate court in reviewing a trial court's ruling in an Article 11.072 proceeding, the court of appeals's statement of the standard of review was inaccurate. Even affidavits and documentary evidence must be viewed with deference to the trial court's ability to resolve questions of fact. Consequently, we reverse the judgment of the court of appeals and remand the case to it for further proceedings.

## I. BACKGROUND

### A. Trial Evidence and Argument about the Incident

Appellant was indicted for failure to stop and render aid.[2] The charge stemmed from a crash involving a police vehicle during a high speed chase, although there was evidence to suggest that the police vehicle was not part of the chase but was yielding to emergency traffic. The crashed vehicle was an Impala driven by Lieutenant Gaisile Goudeau of the Harris County Sheriff's Office, and she suffered serious injuries. Appellant was not the person being chased nor was he affiliated with the officers involved in the chase. He was a third party driving his truck, with four passengers: Bobby Flores, Charlene Martin, Marion Oshman, and Captain Rick Grassi of the Tomball police department. The relevant questions in the case were whether Appellant's truck collided with the Impala and whether Appellant was aware of the collision (and perhaps its severity).[3] It is undisputed

---

[1] *Ex parte Sanchez*, 608 S.W.3d 222, 228 (Tex. App.–Houston [1st Dist.] 2020).

[2] *See* TEX. TRANSP. CODE § 550.021.

[3] § 550.021 was amended, effective September 1, 2013, to require a person to stop if an accident is "reasonably likely to result" in injury or death to a person. Appellant's indictment contained the "reasonably likely to result" language, but the collision predates the appearance of this language in the statute. *See Curry v. State*, ___ S.W.3d ___, 2019 WL 5587330 (Tex. Crim. App. October 30, 2019), for a discussion of the effect of the 2013 amendments.

that he did not stop.

At trial, an officer who was involved in the chase testified that he saw a truck matching Appellant's vehicle collide with the Impala, throwing it into the air, over the curb, and into a parking lot. He said there were no other vehicles on the roadway. The trial evidence also showed that Appellant told a sheriff's deputy that a vehicle had darted in front of him and that he braked and swerved to avoid a collision. There was evidence that "generally speaking," Appellant's and Captain Grassi's "stories were consistent" and that all four of the passengers' statements were consistent with each other. When one of the State's investigating officers was asked if the story given by the passengers was consistent with his theory of this case, the officer answered: "Other than one aspect of it, yes." The aspect in dispute appears to be whether, in swerving, Appellant did or did not hit the Impala.

Appellant did not testify, and neither side called any of Appellant's passengers to the stand. During closing argument, both Appellant and the State indicated that Appellant's passengers would have said essentially the same thing as Appellant, had they been called. Appellant suggested that was the reason the State did not call them, while the State suggested that their testimony would not have been truthful.

### B. Habeas Evidence

On habeas, Appellant submitted affidavits from Grassi, Flores, and Martin. The three witnesses provided affidavits saying that they were passengers in Appellant's truck, Appellant swerved to avoid a car that darted out in front of him, and they were not aware of a collision. Martin also said that if she had been asked to testify at trial, she would have done so.

### B. Trial Court Findings

In its findings, the trial court noted that defense counsel did not call any witnesses in his case-in-chief at the guilt stage of trial. The trial court observed that defense counsel elicited testimony on cross-examination (1) that Grassi, Martin, and Flores all made statements that were consistent with each other and (2) that Appellant and Grassi made statements consistent with each other. The trial court concluded that Appellant failed to show that trial counsel was deficient and failed to establish a reasonable probability that the result of the proceedings would have been different had the passengers been called to testify at Appellant's trial. In its third conclusion of law, the trial court found Appellant "fail[ed] to show that Grassi, Martin, and Flores were available and that their testimony would have benefitted the defense."

## C. Appeal

The court of appeals held that *de novo* review was appropriate because the habeas judge was not the trial judge, and there was no evidentiary hearing, and consequently the habeas judge was not in an appreciably better position than the reviewing court to resolve the matter.[4] The court of appeals said that Appellant had to show three things to establish deficient performance by his trial counsel: (1) that the uncalled witness would have been available to testify, (2) that the witness's testimony would have been of some benefit to the defense, and (3) that the defense attorney had no valid strategy for failing to call the witness.[5]

The court of appeals concluded that it did not need to analyze Flores's affidavit because Flores did not say that he was available to testify.[6] The court of appeals also concluded that

[4] *Sanchez*, 608 S.W.3d at 228.

[5] *Id.* at 230, 232.

[6] *Id.* at 230.

Appellant had not shown that Captain Grassi would have been available to testify because his affidavit did not say whether he would have.[7] But the court of appeals concluded that Martin was available to testify because she said so in her affidavit.[8]

The court of appeals further found that Martin's affidavit was inconsistent with the State's theory.[9] The appellate court concluded that Martin would have testified that there was no impact that anyone would have observed, and that this would have contradicted the State's theory of the case and bolstered Appellant's trial theory.[10] Accordingly, the court of appeals held that Appellant "established that at least one witness was available and [her] testimony would have been of some benefit to the defense."[11] The court of appeals concluded that the habeas court's conclusion to the contrary was unsupported by the record.[12]

The appellate court also held that Appellant was prejudiced. The court concluded that the evidence against Sanchez was not overwhelming because the complaining witness could not remember the accident and because the officer who testified that he saw the collision claimed that he saw it through his rearview mirror while driving 100 miles per hour away from the accident during a police chase.[13] The appellate court also noted that Appellant's airbags did not deploy, that

---

[7] *Id.* Appellant maintains that Captain Grassi was available because, as a public servant, he could have been required to testify.

[8] *Id.* at 231.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 233.

[13] *Id.* at 231.

his truck had minimal damage, and that there was no evidence of anything else that should have alerted Appellant to a collision.[14]   The court did acknowledge that there were scuff marks on Appellant's bumper and undercarriage, a crack on the grill, gray paint on the truck that seemed to match the Impala, and a dark plastic remnant in the tire tread, but it concluded that "[t]he physical evidence did not exclude sources other than a collision" for these things.[15]   The court further concluded that there was no evidence of Appellant's state of mind at the time of the accident and that Appellant came forward the day after the accident and cooperated with the investigation.[16]

The court of appeals further noted that the defense put on no witnesses.[17] The appellate court found Appellant's defensive theory to be that there was no collision, or if there was, it was so minor that he was unaware of it.[18]   The appellate court concluded that the failure to call a witness to advance this theory was prejudicial.[19]

But the court of appeals held that the deficient performance inquiry was still incomplete because it was possible that defense counsel had a valid trial strategy for failing to call a witness.[20] By way of illustration, the court of appeals suggested that defense counsel might decline to call a witness because the witness planned to lie under oath or because calling the witness would open the

---

[14]  *Id.*

[15]  *Id.*

[16]  *Id.*

[17]  *Id.*

[18]  *Id.* at 232.

[19]  *Id.*

[20]  *Id.*

door to potentially more harmful impeachment.[21]  The court of appeals found that the record did not provide insight into whether or not defense counsel had a valid strategy.[22]

Concluding that the habeas court's findings with respect to Martin were unsupported by the record, the court of appeals declined to adopt them.[23]  The appellate court reversed the trial court's order denying habeas relief and remanded for proceedings consistent with its opinion.[24]

A dissenting opinion authored by Justice Keyes argued that the case was a simple one where the appellant failed to carry his burden of showing ineffective assistance.[25]  According to the dissent, the en banc court upended the long-established standard of proof for ineffective assistance claims and "the almost totally deferential standard of review of findings of historical fact by a trial court," instead substituting "its own new standards" and "review[ing] the historical facts in the record de novo."[26]

## II. ANALYSIS

The State contends that the court of appeals erred to act as a factfinder in Appellant's Article 11.072 habeas proceeding, contrary to precedent that provides that, unlike in an Article 11.07 writ where the Court of Criminal Appeals is the ultimate factfinder, the court of appeals role in an Article

---

[21]  *Id.*

[22]  *Id.* at 232-33.

[23]  *Id.* at 234.

[24]  *Id.*

[25]  *Id.* (Keyes, J., dissenting, joined by Lloyd, J.).  Chief Justice Radack dissented without opinion.

[26]  *Id.* at 234-35.

11.072 writ is purely that of an appellate court. The State argues that the question before an appellate court is not whether to accept or reject a trial court's findings, but whether the trial court abused its discretion in denying relief. The State further asks us to overturn what it characterizes as the court of appeals's decision to remand for a second round of fact finding. Appellant contends, though, that the court of appeals was empowered to remand under Rules of Appellate Procedure 43.6 and 44.4.

We need not address whether a remand is authorized here. The court of appeals's decision to remand was obviously influenced by its conclusion that Martin's affidavit established her availability to testify at trial and its conclusion that her testimony would have benefitted the defense. That rationale for the remand decision is undermined if the court of appeals employed the wrong standard of review in arriving at those conclusions. Moreover, even if a remand were ultimately determined to be authorized and appropriate, the court of appeals's conclusions about Martin's testimony would affect the scope of the issues before the trial court on remand.

We conclude that the court of appeals articulated the wrong standard of review. Unlike Article 11.07 cases where our court is the ultimate finder of fact, in Article 11.072 cases, the trial court is the sole finder of fact, and the reviewing court acts only as an appellate court.[27] Even for an appellate court, some issues in an Article 11.072 case are subject to *de novo* review, but not everything is.[28] Findings of historical fact made at the trial level are still given deference on appeal

---

[27] *Ex parte Garcia*, 353 S.W.3d 785, 787-88 (Tex. Crim. App. 2011) (Art. 11.072 case).

[28] *Id.* at 787 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App.1997)).

even when the findings are based solely on affidavits.[29] That does not change simply because the habeas judge was not the trial judge. The habeas judge was still a trial level finder of fact to whom deference on certain issues—such as those involving historical fact—is required. By saying that it could conduct a *de novo* review because the habeas judge was not the trial judge, and that the habeas judge was in no better position than the appellate court, the court of appeals indicated that it was conducting a *de novo* review even of the historical facts. In that respect, the court of appeals erred.

We reverse the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.

Delivered: June 30, 2021

Publish

---

[29] *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *Manzi v. State*, 88 S.W.3d 240, 243-44 (Tex. Crim. App. 2002).