

NUMBER 13-10-00317-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JESSE CASTILLO JR.,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

On appeal from the 24th District Court
of Victoria County, Texas.

# MEMORANDUM OPINION[1]

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion by Justice Rodriguez**

A jury convicted appellant Jesse Castillo Jr. of continuous sexual assault of H.L., a

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

child less than fourteen years old,[2] and sentenced him to thirty-seven years in the Texas Department of Criminal Justice—Institutional Division, without eligibility for parole. *See* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2010). By five issues, Castillo complains of the following: (1) trial court error in removing a juror from the panel; (2-4) trial court error in admitting outcry testimony, "bolstering" testimony, and the Child Advocacy Center (CAC) child assessment videotape; and (5) ineffective assistance of counsel. We affirm.

## I.  Removal of a Juror

By his first issue, Castillo contends that the trial court erred when it removed a juror from the panel before trial and, without declaring the juror disabled, replaced him with a juror who had departed. He also complains that the trial court erred when it did not declare a mistrial.

## A.  Background

After the jury was sworn but before any witnesses were called, the trial court notified the parties that it had received a letter from one juror explaining that he had a similar sexual-abuse experience in his family. At a bench conference, when the trial court asked this juror if he could make a decision about the guilt or innocence of Castillo based on the evidence alone, he answered, "I don't know." The juror also agreed that he was very concerned about that—"[v]ery much so." The State and defense counsel declined the opportunity to ask questions of this juror.

After the juror returned to the jury room, the trial court expressed its belief that it did not think the juror's answer was equivocal; the court "thought [the juror] was definitely saying . . . that he didn't know if he could be fair." The trial court concluded that it had "no

---

[2] Initials have been used to protect the identity of the child.

2

choice but to excuse him from jury duty in this trial."  Castillo did not object, and the trial court excused the juror.

The trial court then asked Castillo if he was willing to "try this case to the 11 remaining jurors."  *See* TEX. CODE CRIM. PROC. ANN. art. 36.29 (West Supp. 2010). Castillo responded, "No."  The trial court next asked Castillo if he wanted a mistrial, and Castillo responded, "No, I don't."  After Castillo rejected a mistrial, the following exchange occurred between the trial court, Castillo, his counsel, and the State:

| | |
|---|---|
| Court: | Then the next solution is, by agreement[,] we can have the next juror on the list . . . come in, I can read the instructions to him, I can have the indictment read again to Mr. Castillo in [his] presence and receive his plea and then add [this next juror] to the jury, thereby comprising a 12-person jury.  Mr. Castillo, do you agree to that solution? |
| Castillo: | Yes, sir. |
| Court: | [Defense counsel], do you agree to that— |
| [Defense Counsel]: | Yes, sir. |
| Court: | —solution?   [A]nd does the State agree to that solution? |
| [State]: | State agrees, Your Honor. |

## B. Discussion

Now, on appeal, Castillo asserts that because the excused juror may only have been biased or prejudiced against him and because the juror did not answer definitively "yes" or "no," the trial court "improperly and too quickly released [the] juror . . . from duty prior to making an appropriate detailed inquiry," and once released and without an agreement to proceed with only eleven jurors, the trial court failed to pursue the only

3

remedy "sanctioned by article 36.29," which Castillo identifies as the "discharge of the remainder of the jury panel through declaration of a mistrial." *See id.*

The initial question before us appears to be whether the juror was disabled within the context of article 36.29(a). *See id.* (setting out that if, after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting, the remainder of the jury has the power to render the verdict). A juror is disabled if he has a "physical illness, mental condition, or emotional state" which hinders the juror's ability to perform the duty of a juror. *Hill v. State*, 90 S.W.3d 308, 315 (Tex. Crim. App. 2001). We "defer to the trial court's factual determinations . . . because the judge is 'Johnny-on-the-spot,' personally able to see and hear the witnesses testify. He makes credibility determinations, based upon demeanor, tone of voice, hesitancy of speech, perhaps the almost imperceptible shrug of shoulders, tightening of the jaw, or clench of fists." *Manzi v. State*, 88 S.W.3d 240, 254 (Tex. Crim. App. 2002) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985) ("[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.")).

With regard to claims of error during jury selection, the trial court's ruling will not be disturbed absent a showing of an abuse of discretion. *Jones v. State*, 982 S.W.2d 386, 388 (Tex. Crim. App. 1998) (en banc) (stating that an abuse of discretion standard applies to error in selecting jury); *Curry v. State*, 910 S.W.2d 490, 493 (Tex. Crim. App. 1995) (en banc). If a juror vacillates or equivocates on the juror's ability to follow the law, "the reviewing court must defer to the trial court's judgment." *Brown v. State*, 913 S.W.2d

4

577, 580 (Tex. Crim. App. 1996); *Riley v. State*, 889 S.W.2d 290, 300 (Tex. Crim. App. 1993) (en banc).

In sum, the evidence in this case reveals that the trial court received a letter from the juror in question indicating that his daughter had a similar experience as did H.L. in this case. The juror indicated that he did not know if he could hear the evidence, evaluate it, and make a decision of guilt or innocence based on that evidence alone. When the trial court asked the juror if he was concerned about that, he responded, "Very much so." Then, when provided an opportunity to ask questions of this juror, neither the State nor Castillo did so. And Castillo raised no objection to this juror being excused. The trial court, being aware of the variations in the juror's demeanor, tone of voice, and hesitancy of speech, among other things, concluded that the juror's response was not equivocal and that it had no choice but to excuse him. *See Manzi*, 88 S.W.3d at 254. Further, even had the juror been vacillating in his belief that he could apply the facts to the law, we must defer to the trial court's judgment. *See Brown*, 913 S.W.2d at 480. Therefore, assuming without deciding that this issue was preserved for our review,[3] based on the evidence before the trial court, we conclude the trial court did not abuse its discretion on this basis. *See Routier v. State,* 112 S.W.3d 554, 588 (Tex. Crim. App. 2003) (providing that the determination as to whether a juror is disabled is within the discretion of the trial court); *Jones*, 982 S.W.2d at 388.

Having determined that the trial court did not abuse its discretion by excusing the juror, the second matter for this Court to determine is whether the trial court erred by

---

[3] We note that the State first asserted that Castillo failed to preserve this issue of juror disability because he did not object when the trial court excused the juror.

failing to discharge the remainder of the jury panel through declaration of a mistrial. Article 36.29 "is not applicable until the jury is sworn." *Broussard v. State*, 910 S.W.2d 952, 957 (Tex. Crim. App. 1995). The jury had been sworn in this case, therefore, article 36.29 applied. Generally, the trial court errs if it does not give a defendant the opportunity to choose between continuing with eleven jurors, as provided by article 36.29, or seeking a mistrial. *See generally Carrillo v. State*, 597 S.W.2d 769, 771 (Tex. Crim. App. 1980); *see also Hegar v. State*, 11 S.W.3d 290, 294 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *accord Decker v. State*, 717 S.W.2d 903, 905 (Tex. Crim. App. 1983) (en banc) (applying article 36.29 reasoning in unsworn jury case) (citing *Williams v. State*, 631 S.W.2d 955, 957 (Tex. App.—Austin 1982, no pet.)). In this case, however, the trial court gave Castillo that opportunity. Castillo informed the court that he chose neither eleven jurors nor the opportunity to seek a mistrial, and Castillo's counsel did not indicate otherwise. Instead, Castillo, his counsel, and the State agreed to bring in the next juror on the list, read that juror the instructions, read the indictment again to Castillo in the presence of that juror, receive his plea, and then add the next juror to the jury, thereby comprising a twelve-person jury.

It is within the trial court's sound discretion to consider less drastic alternatives to a mistrial. *Strickland v. State*, 741 S.W.2d 551, 552-53 (Tex. App.—Dallas 1987, no pet.). Here, the trial court held a hearing and established facts relevant to proceeding to trial with eleven jurors. After Castillo declined that possibility and informed the trial court he did not want to pursue a mistrial, all parties agreed to bring in the next juror not previously struck and to continue the trial with twelve jurors. In this case, we conclude that it was

6

proper for the trial court to proceed in this manner and that the trial court did not abuse its discretion on this basis. We overrule Castillo's first issue.

## II. Admission of Evidence

### A. Outcry Testimony

By his second issue, Castillo complains that the trial court erred when it admitted outcry testimony of R.G., H.L.'s step-mother,[4] without first holding a hearing outside the presence of the jury to determine the reliability of the statement based on the time, content, and circumstances of the statement, as required by article 38.072 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2) (West Supp. 2010). Castillo contends that this error affected his substantial rights to a fair and just trial and constitutes reversible error.

It is undisputed that the trial court did not conduct a reliability hearing. *See id.* However, any error resulting from the admission of the testimony of R.G. was rendered harmless when other evidence was admitted describing the same facts. *See Lane v. State*, 151 S.W.3d 188, 192-93 (Tex. Crim. App. 2004); *Long v. State*, 821 S.W.2d 216, 217 (Tex. App.—Houston [14th Dist.] 1991, no pet.). H.L. testified regarding the details of the sexual abuse. Castillo did not object to this testimony. On cross-examination, H.L. confirmed that she talked with R.G. and told her what Castillo had done. Because the same facts were described through H.L.'s testimony, without objection, any error in the admission of R.G.'s outcry testimony was harmless. *See Lane*, 151 S.W.3d at 192-93; *Long*, 821 S.W.2d at 217. We overrule Castillo's second issue.

---

[4] R.G. testified that H.L.'s father was her common-law husband and that she had known H.L. since H.L. was a baby.

## B. "Bolstering" Testimony

Castillo contends, by his third issue, that the trial court erred when it admitted the following allegedly improper bolstering testimony offered by R.G. on redirect examination by the State:

Q. So do you believe [H.L.] or not?

A. Yes, I do.

Castillo offered no objection, and this issue has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a). We overrule Castillo's third issue.

## C. CAC Assessment Videotape

In his fourth issue, Castillo contends that the trial court erred when, contrary to the provisions of rule of evidence 801(a)(1)(B), it admitted the CAC child assessment videotape as a prior consistent statement. *See* TEX. R. EVID. 801(e)(1)(B). He claims that the State's reliance on rule 801 and *Hammons v. State* is misplaced. *See* TEX. R. EVID. 801(e)(1)(B); *Hammons*, 239 S.W.3d 798, 806 (Tex. Crim. App. 2007). We disagree.

Rule 801(e)(1)(B) provides that a statement is not hearsay if the declarant testifies at trial subject to cross-examination, the statement is consistent with the declarant's testimony, and the statement "is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." TEX. R. EVID. 801(e)(1)(B). It is clear from the record that H.L. testified at trial and was cross-examined before the videotape was introduced and admitted into evidence. *See id.* It is also undisputed that H.L.'s prior statement was consistent with her trial

8

testimony. *See id.* The only question then before this Court is whether a charge of recent fabrication was raised by Castillo which would warrant admission of H.L.'s prior consistent statement under rule 801(e)(1)(B).[5] *See id.*

We review the trial court's ruling that a prior consistent statement is admissible under rule 801(e)(1)(B) for an abuse of discretion. *Hammons*, 239 S.W.3d at 806. The trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007) (quoting *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005)). We view the evidence in the light most favorable to the trial court's ruling admitting the statement. *Klein v. State*, 273 S.W.3d 297, 304 (Tex. Crim. App. 2008).

In assessing whether the cross-examination of a witness makes an implied charge of recent fabrication or improper motive, a reviewing court should focus on the "purpose of the impeaching party, the surrounding circumstances, and the interpretation put on them by the [trial] court." *Hammons*, 239 S.W.3d at 808 (citation omitted). A charge of recent fabrication "may be subtly implied through tone, tenor, and demeanor" and need not be restricted to the specific wording used by counsel. *Id.* at 799. Because there is no "bright line" between a challenge to the witness's memory or credibility and a suggestion of conscious fabrication, the trial court has substantial discretion in determining whether the tenor of the questioning reasonably implies a recent, conscious

---

[5] At the hearing on the State's motion to admit the videotape, Castillo informed the trial court that at some point he would be arguing that H.L. fabricated the accusations. On appeal, Castillo contends that any concession at the hearing was to an implied charge against H.L. of fabrication from the beginning; it was not an implied charge against H.L. of recent fabrication. *See* TEX. R. EVID. 801(e)(1)(B). However, arguments on appeal must comport with arguments made at trial, and an appellant must bring to the trial court's attention the very complaint that it is now making on appeal. *See Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). Because Castillo did not urge the distinction to the trial court, he has failed to preserve this argument for our review. *See id.*

intent to fabricate.  *Id.* at 804-05.

Here, Castillo cross-examined H.L. concerning the overall strictness of her father and step-mother as compared to her mother and Castillo.   Specifically, Castillo asked H.L. if her father and step-mother were more lenient with the way she dressed than Castillo or not as "strict."   Castillo also asked questions about which set of parents allowed her to talk with male friends.   Later during this cross-examination, Castillo asked H.L. who was less strict, her dad and step-mother or her mother and Castillo.

At the hearing on the State's motion to admit the videotape, after ruling that it was "going to let the tape in," the trial court explained its reasoning as follows:   "Because I believe that there is an implied—through the cross[-]examination I think there is an implication that there is recent fabrication in the girl's testimony and therefore I think it fits the rule and so I'm allowing it in."

Assuming without deciding that Castillo made no concession of fabrication at the hearing and "giving deference to the trial judge's assessment of tone, tenor, and demeanor," we conclude the trial court did not abuse its discretion in admitting the videotaped out-of-court statement under rule 801(e)(1)(B).   *See id.* at 809.   The implication made by Castillo through this line of questioning was that H.L. fabricated the evidence against him so that she could live with her biological father and step-mother who were not as strict as Castillo.   A reasonable juror could have concluded that Castillo, the cross-examiner, was mounting a charge of recent fabrication which would warrant admission of the videotape—H.L.'s prior consistent statement—under rule 801(e)(1)(B). *See id.*; *Michael v. State*, 235 S.W.3d 723, 728 (Tex. Crim. App. 2007); *see also* Tᴇx. R.

10

EVID. 801(e)(1)(B).   We overrule Castillo's fourth issue.[6]

### III.   Ineffective Assistance of Council

By his fifth issue, Castillo asserts that trial counsel provided ineffective assistance. Castillo alleges that counsel was ineffective when he failed to do the following:   (1) request a mistrial when presented with the juror disability issue prior to starting trial; (2) request an outcry-witness reliability hearing; (3) request a gatekeeper hearing; (4) object to the introduction of the medical records of sexual assault nurse examiner; (5) object to the bolstering of H.L.'s testimony by the nurse; (6) cross-examine the State's victim-impact counselor during the punishment hearing; and (7) present an adequate closing argument during the punishment phase of the trial.

### A.   Standard of Review

*Strickland v. Washington* sets forth the standard with which we review claims of ineffective assistance of counsel.   466 U.S. 668, 688 (1984); *see Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991) (en banc).   In order to determine whether appellant's trial counsel rendered ineffective assistance at trial, we must first determine whether he has shown counsel's representation fell below an objective standard of reasonableness—whether counsel's representation was deficient—and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors—whether the deficient performance was so serious that it deprived appellant of a fair trial.   *Strickland*, 466 U.S. at 688, 690-94.

---

[6] Castillo also argues, by his fourth issue, that the videotape was admitted contrary to article 38.071 of the Texas Code of Criminal Procedure; specifically that the State did not establish the proper predicate for the admission of the videotape.   *See* TEX. CODE CRIM. PROC. ANN. art. 38.071 (West Supp. 2010).   However, this argument was not made to the trial court and, therefore, was not preserved for our review.   *See Reyna*, 168 S.W.3d at 177.

11

In assessing a claim of ineffective assistance of counsel, we indulge a strong presumption that "counsel's conduct fell within a wide range of reasonable representation." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Stafford*, 813 S.W.2d at 508-09. When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). And rarely will the trial record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). To demonstrate prejudice under the second prong, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697.

## B. Discussion

### 1. Mistrial After a Juror Was Declared Disabled

Castillo first complains that counsel was ineffective when he did not argue for a

mistrial or when counsel refused to accept a mistrial offered by the trial court when a juror was declared disabled although Castillo himself refused to accept a mistrial. He contends that the requirements of article 36.29(c) are mandatory, including the granting of a mistrial, and argues that counsel's incorrect understanding of this requirement cannot reasonably be considered to be trial strategy or tactics. *See* TEX. CODE CRIM. PROC. ANN. art. 36.29(c). Castillo asserts that "[i]f a mistrial would have been granted, a new panel of prospective jurors would have then been examined, and trial counsel would have had the opportunity to apply the lessons already learned from the State's initial voir dire examination."

As we set out in Castillo's first issue, a trial court has discretion to consider the less drastic alternative to a mistrial, and in this case, the trial court did so. *See Strickland*, 741 S.W.2d at 552-53. The record is silent as to trial counsel's strategy in choosing to go forward. *Bone*, 77 S.W.3d at 833. It is possible that Castillo and his counsel wanted to exclude this juror because he might have been prejudiced against Castillo. We may not speculate about why counsel acted as he did, *see Toney v. State*, 3 S.W.3d 199, 210 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd), and we simply do not have sufficient information to make the determination that this challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed,* 187 S.W.3d at 392. Therefore, the first prong—deficient performance—has not been satisfied. *Strickland*, 466 U.S. at 688, 690-94. Moreover, on this record, we are not persuaded by Castillo's second-prong argument, that the result of the proceedings would have been different had a new panel been selected because defense counsel "would have had the

13

opportunity to apply the lessons already learned from the State's initial voir dire examination." *See id.* at 694.

### 2. Outcry-Witness Hearing

Castillo also contends that counsel was ineffective when he did not object to the trial court's failure to conduct an outcry-witness hearing in order to determine the reliability of H.L.'s statement to R.G. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. Castillo asserts that there is no strategic reason for failing to request the hearing when it becomes apparent that the trial court is not going to do so and that by not having a hearing, the trial court was deprived of its ability to determine the reliability of the statement as to time, content, and circumstances. *See id.* We are not persuaded by these arguments when H.L. testified and described the same details of the sexual abuse.[7] *See Lane*, 151 S.W.3d at 192-93; *Long*, 821 S.W.2d at 217.

### 3. Gatekeeper Hearing Pursuant to Rule of Evidence 705(b)

Castillo complains that counsel was ineffective when he did not request a rule 705(b) hearing for either of the State's expert witnesses, Elena Torres, a family violence counsel, and Lisa Baylor, a forensic scientist. *See* TEX. R. EVID. 705(b) (allowing the opposing party an opportunity to explore the basis of the expert's opinions without fear of eliciting damaging hearsay or other inadmissible evidence in the presence of the jury). He asserts that, had counsel requested a rule 705(b) hearing, the defense would have been allowed to conduct a voir dire examination directed to the underlying facts or data

---

[7] Castillo also asserts that counsel did not properly object to statements made by H.L. as testified to by a witness who was not designated as an outcry witness. Castillo presents this as a basis for his ineffective assistance of counsel complaint in his "Summary of the Argument," but his brief wholly fails to discuss or analyze the argument and does not contain citations to the record or authority. We conclude that Castillo has waived this argument. *See* TEX. R. APP. P. 38.1(i).

upon which each opinion was based.  *See id.*

### a. Elena Torres

As acknowledged by Castillo, the subject matter of Torres's testimony related to the reactions of children to sexual abuse.  Although Torres generally testified regarding such reactions, our review of the record reveals that Torres provided no damaging, inadmissible testimony in the presence of the jury that could have been discovered in a rule 705(b) hearing outside the presence of the jury.  *See Goss v. State*, 826 S.W.2d 162, 168 (Tex. Crim. App. 1992) (en banc); *see also McBride v. State*, 862 S.W.2d 600, 609 (Tex. Crim. App. 1993) (en banc); *Vasquez v. State*, 819 S.W.2d 932, 935 (Tex. App.—Corpus Christi 1991, pet. ref'd) (providing that rule 705(b) allows the party not calling the expert to explore the basis for the opinions without having the jury exposed to otherwise inadmissible data).

Furthermore, during cross-examination trial counsel had the opportunity to, and did, ask Torres whether the reactions about which she testified were always associated with sexual abuse.  Counsel asked, "Could a child take on characteristics of sexual assault without actually having been sexually assaulted?", and Torres responded, "Rarely."  Following a series of questions directed at eliciting testimony regarding how a child might fabricate such responses, counsel's cross-examination ended with the following:

Q.  But isn't it also possible that we're also training a child, if they wanted to get an adult in trouble, we're teaching them what to say to trigger investigations, we're training them what to say in order to make it more believable?

A.  It's just very, very rare that that ever happens.

15

Q.    But it is possible?

A.    I suppose.   Anything's possible, I mean. . . .

Clearly, counsel's strategy was to discredit Torres's testimony in support of his fabrication defense.   We cannot conclude that the lack of a hearing impacted the effect of Torres's testimony.

Finally, Castillo complains that counsel was ineffective because he did not cross-examine Torres as to whether she had personally interviewed or met with H.L. or any member of her family.   He asserts that "this arguably left the jury with the decision that Ms. Torres had, indeed, met with the complaining witness and/or members of her family and had formed her opinion as a result of such interview(s) and meeting(s)." However, the record is silent on this point, and it is just as arguable that because neither the State nor defense counsel addressed these facts, it was apparent to the jury that Torres had met with neither H.L. nor her family members.

### b.  Lisa Baylor

Again, as with Baylor, Castillo complains that had trial counsel requested a 705(b) evidentiary hearing, he would have been allowed to conduct a voir dire examination to explore the underlying facts or data underlying Baylor's opinion as to DNA evidence. *See* TEX. R. EVID. 705(b).   Thus, Castillo argues that his defense counsel was ineffective for not doing so.

Without providing record citations, Castillo summarily states that "Ms. Baylor testified about the stratospheric probabilities that another Hispanic male, other than [Castillo], could be found on the planet matching the DNA profile results produced by her

16

analysis." Castillo then makes the following argument, specific as to Baylor:

> With regard to Ms. Baylor's testimony, there was no record of any cross-examination as to lab protocols, lab procedures, sample error rates, and the like. While [Castillo] readily concedes that DNA technology is no longer a novel science, he respectfully asserts that a proper 705(b) evidentiary hearing can uncover possible problems as to the application of the scientific techniques to this particular case. . . .
>
> There was no effective cross-examination of Ms. Baylor regarding lab protocol and procedures. The State was not put to its burden to show for the testimony of . . . Ms. Baylor that the requirements of qualification, reliability, and relevance of the testimony had been met. (Citations omitted.)

Our review of the State's direct examination of Baylor, however, reveals that the State met the requirements of qualification, reliability, and relevance. *See Vela v. State*, 209 S.W.3d 128, 130-31 (Tex. Crim. App. 2006) (explaining that these requirements are based on Texas Rules of Evidence 104(a) (qualification), 702 (reliability), and 401 and 402 (relevance)). Because the record is silent regarding counsel's strategy, we do not know why counsel chose to refrain from addressing these matters on cross-examination. Instead, he chose to challenge the conclusiveness of Baylor's findings as to Castillo and the possibility of the DNA being that of another person from whom a buccal swab was not obtained. We cannot conclude that this challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. And, as we determined in Castillo's challenge to the State's expert on family violence, neither can we conclude that the lack of a hearing impacted the effect of Baylor's testimony.

### 4. Admission of Medical Records and Nurse's "Bolstering" Testimony

Castillo argues that counsel was ineffective when he failed to make a hearsay objection to the admission of the Sexual Assault Examination Forensic Report of Leslie

17

Kallus, the sexual assault nurse examiner who examined H.L., because this medical record identified Castillo as the perpetrator of the sexual assault. Castillo acknowledges that the State would have likely obtained the admission of the medical record under hearsay exception 803(4), *see* TEX. R. EVID. 803(4); *Taylor v. State*, 268 S.W.3d 571, 590 (Tex. Crim. App. 2008), but in doing so would have provided trial counsel with important information useful for cross-examination purposes including such matters as the lag period between the interview and her arrival at the hospital, the method of interrogation and examination, and types of statements made. Castillo also contends that trial counsel was ineffective in his representation when he did not object when Kallus testified on direct examination that the biological evidence on H.L.'s breast demonstrating that Castillo could not be excluded as a contributor was consistent with H.L.'s medical history and her description of what had occurred.

We do not know why Castillo chose to refrain from objecting to Kallus's allegedly inadmissible testimony or to the admission of her medical records. The record is devoid of any explanation regarding counsel's reasons or strategy in not objecting. It is possible that counsel may have chosen not to object to the evidence because "an objection might draw unwanted attention to a particular issue." *Bollinger v. State*, 224 S.W.3d 768, 781 (Tex. App.—Eastland 2007, pet. ref'd). Therefore, the record does not demonstrate that the challenged conduct was not so outrageous that no competent attorney would have engaged in it, and Castillo has failed to overcome the presumption that counsel's actions were sound trial strategy. *See Goodspeed,* 187 S.W.3d at 392; *Garcia*, 57 S.W.3d at 440; *Stafford*, 813 S.W.2d at 508-09.

18

### 6. Cross-Examine a Witness During the Punishment Phase of the Trial

Castillo also bases his claim of ineffective assistance on counsel's failure to cross-examine the State's victim-impact counselor, Leticia Lechuga, during the punishment phase of the trial. The State called Lechuga, a crisis interventionist counselor at Hope of South Texas, who saw H.L. on forty different occasions beginning July 3, 2008. The State focused its questions on how H.L. reacted when her mother stopped supporting her and how different victims react to sexual abuse, not how H.L. reacted to sexual abuse. When the State passed the witness, defense counsel asked no questions.

Castillo asserts that because Lechuga had seen H.L. on many occasions, she would have been able to testify about the events which had occurred in her life since the sexual abuse incidents. He argues, based on defense counsel's "no questions" approach, that the jury was left with the sole impression provided by Lechuga that sexual abuse victims have boundary issues, become promiscuous, have trust issues, and get into abusive unhealthy relationships because their self-worth and self-esteem have been so damaged that counseling may not be able to repair the damage. Castillo urges this Court to find that it is clear from the record that there existed no compelling strategic reason to not ask questions of Lechuga and that her opinions should have been fully developed on cross-examination. We decline to do so.

The State's direct examination of Lechuga highlighted H.L.'s reaction to the loss of her mother's support. Lechuga also provided testimony about how persons who are sexually assaulted generally react. The record is silent as to the motivation of counsel's

19

tactial and strategic decisions. Defense counsel may have made a strategic decision to not cross-examine Lechuga fearing adverse effects from such examination or fearing that he may inadvertently introduce damaging evidence, i.e., that H.L. did, in fact, exhibit reactions similar to those discussed by Lechuga. *See Rockwood v. State*, 524 S.W.2d 292, 293-94 (Tex. Crim. App. 1975) (concluding that counsel's failure to cross examine the complainant, among other things, was not ineffective assistance); *Pryor v. State*, 719 S.W.2d 628, 634 (Tex. App.— Dallas 1986, pet. ref'd) (same); *see also Grant v. State*, No. 13-08-00424-CR, 2009 Tex. App. LEXIS 1629, at *4-6 (Tex. App.—Corpus Christi 2009, no pet.) (mem. op., not designated for publication) (concluding that defense counsel's failure to present available impeachment evidence or thoroughly cross-examine the victim did not constitute ineffective assistance where record was silent as to the motivation of counsel's tactical and strategic decisions). Again, we must conclude that the challenged conduct is not so outrageous that no competent attorney would have engaged in it. *See Goodspeed,* 187 S.W.3d at 392. It is appellant's burden to show that trial counsel rendered deficient representation because of his failure to cross-examine the State's witness. *See Davis v. State*, 831 S.W.2d 839, 843 (Tex. App.—Dallas 1992, pet. ref'd). We cannot conclude that Castillo has done so in this instance.

### 7. Closing Argument at Punishment Hearing

Finally, Castillo contends that counsel was ineffective because he presented an inadequate closing argument during the punishment phase of the trial, amounting to only two pages of the reporter's record. He complains that nowhere in closing argument did

counsel emphasize Castillo's good character traits or even summarize the testimony of the defense's punishment witnesses. *See Moore v. State*, 983 S.W.2d 15, 23-24 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (concluding that counsel's performance was ineffective when he made no investigation regarding possible mitigation evidence which "rendered the adversarial process presumptively unreliable at punishment," failed to investigate appellant's background, and presented a closing argument which failed to disclose any of appellant's good character traits). Castillo urges this Court to find that there existed no strategic reason not to emphasize good character traits elicited during the defense's case in chief and that counsel's closing argument was inadequate and ineffective.

Counsel's argument occurred at the punishment stage of Castillo's trial, after his guilt had been determined by the jury sitting to decide his penalty. Throughout his argument, trial counsel extensively argued compassion for the Castillo family. He reminded the jurors that their job was not to hand out vengeance but to hand out justice and that, in this case, justice would be served by sentencing Castillo to the minimum twenty-five years and not keeping him in prison any longer. Castillo overlooks these aspects of his trial counsel's argument so that he can highlight what he claims is missing, specifically an argument about his good character traits.

It is also plausible that counsel believed the best strategy might be brevity and openness in an attempt to mitigate punishment. *See Flemming v. State*, 949 S.W.2d 876, 881 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (finding counsel may have believed the best strategy in the closing argument was to be brief and appear open and

21

honest). The record in this case is silent regarding counsel's strategy with respect to the content of his closing argument.

## C. Summation

In summary, we conclude that Castillo has not overcome the presumption that trial counsel's actions were within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 688, 690-94; *Salinas,* 163 S.W.3d at 740. Moreover, to the extent any deficiency existed, Castillo has not demonstrated there was a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694. Based on the record before us, we conclude that Castillo has failed to show ineffective assistance of counsel.[8] We overrule Castillo's fifth issue.

## IV. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 31st
day of August, 2011.

---

[8] Counsel should ordinarily be accorded an opportunity to explain his actions before being condemned as unprofessional and incompetent. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003) (en banc). Because the reasonableness of trial counsel's choices often involve facts that do not appear in the appellate record, an application for writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) (en banc).

22