PD-0143-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/9/2015 12:12:23 PM
Accepted 3/10/2015 9:36:05 AM
ABEL ACOSTA
CLERK

No. PD-0143-15

IN THE

# TEXAS COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

STATE OF TEXAS, *APPELLANT/RESPONDENT*

*v.*

CYNTHIA AMBROSE, *APPELLEE/PETITIONER.*

ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTH COURT OF APPEALS CAUSE NO. 04-13-00788-CR

TRIED IN THE 226TH JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS
TRIAL CAUSE NO. 2012-CR-10002

## APPELLEE'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

March 10, 2015

ABEL ACOSTA, CLERK

DAYNA L. JONES
Bar No. 24049450
LAW OFFICE OF DAYNA L. JONES
1800 McCullough Avenue
San Antonio, Texas 78212
(210) 255-8525
(210) 223-3248 – FAX
DAYNAJ33@GMAIL.COM

**ORAL ARGUMENT REQUESTED**

i

# IDENTITY OF PARTIES AND COUNSEL

**TRIAL JUDGE:**
Honorable Sid Harle, 226th District Court

**FOR THE STATE OF TEXAS:**
S. Patrick Ballantyne – Counsel at trial and on appeal
Bar No. 24053759
Zachary Edwards – Counsel at trial
Bar No. 24049524
Assistant District Attorneys
101 W. Neuva, 7th floor
San Antonio, Texas 78205
PHONE: 210-335-2311

**APPELLEE/PETITIONER'S COUNSEL:**
Scott Sullivan – Counsel at trial
Bar No. 19483350
4 Dominion Drive, Suite 250
San Antonio, TX 78257

Dayna L. Jones – Counsel on appeal
Bar No. 24049450
LAW OFFICE OF DAYNA L. JONES
206 E. Locust Street
San Antonio, Texas 78212
PHONE:  210-255-8525
Daynaj33@gmail.com

**FOURTH COURT OF APPEALS PANEL:**
Justice Luz Elena D. Chapa – Authored the opinion
Justice Marialyn Barnard – Concurring Opinion
Chief Justice Sandee Bryan Marion

i

# TABLE OF CONTENTS

Parties to the Case ..........................................................................................................i

Table of Authorities ...................................................................................................... iii

Request for Oral Argument..............................................................................................1

Statement of the Case......................................................................................................1

Statement of Procedural History....................................................................................2

Grounds for Review ........................................................................................................2

Argument and Authorities...............................................................................................3

Prayer for Relief............................................................................................................14

Certificate of Service ....................................................................................................15

Certificate of Compliance.............................................................................................15

Appendix .......................................................................................................................16

# TABLE OF AUTHORITIES

**Cases:**

*Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App., 1984) ........................2-3, 5-7, 9

*Archie v. State*, 340 S.W.3d 734 (Tex. Crim. App. 2011) ......................................12

*Blake v. State*, 971 S.W.2d 451 (Tex.Crim.App.,1998) ...................................11, 14

*Casanova v. State*, 383 S.W.3d 530 (Tex.Crim.App.,2012) .....................................8

*Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004) ............................4, 7

*Ex parte Wheeler*, 203 S.W.3d 317 (Tex.Crim.App.,2006) ............................ 2-4, 7

*Garcia v. State*, 2013 WL 4033890, 5 (Tex.App.-Corpus Christi, 2013) ..............11

*Herron v. State*, 86 S.W.3d 621 (Tex.Crim.App., 2002) ................................... 9-11

*Igo v. State*, 210 S.W.3d 645 (Tex.Crim.App.,2006) .................................................8

*Oregon v. Kennedy*, 456 U.S. 667 (1982) ........................................................ 2-3, 7

*State v. Ambrose*, --S.W.3d--, 2015 WL 102194 (Tex.App.-San Antonio,2015) ...2, 6, 8-13

*State v. McKnight*, 213 S.W.3d 915 (Tex.Crim.App.,2007) .....................................8

**Rules:**

Texas Rule of Appellate Procedure 9.3 .................................................................15

Texas Rules of Appellate Procedure 68.4(d) ...........................................................1

## STATEMENT REGARDING ORAL ARGUMENT

Because the issue raised in this brief presents a novel issue that, under the facts and procedural history of this case, has not been decided by this court under the facts of this case, oral argument will be helpful and is requested pursuant to Rule 68.4(d) of the Texas Rules of Appellate Procedure.

## STATEMENT OF THE CASE

Petitioner, who was a kindergarten teacher, was tried and convicted of the misdemeanor offense of official oppression in the 226th Judicial District Court in Bexar County, Texas. At trial, the state alleged that Petitioner directed and allowed other kindergarten students in her classroom to strike another student who had been brought to her class by his teacher, Mrs. Ramirez, for discipline.

Petitioner filed a Motion for New Trial alleging, amongst other things, that she suffered egregious harm because the jury instruction did not contain an accomplice witness instruction. After hearing testimony, argument, and reviewing additional briefing by both parties, the trial judge granted Petitioner a new trial on the ground that the jury charge failed to contain an accomplice witness instruction. Because no objection to the jury charge was raised at trial, the trial court applied the correct egregious harm standard and issued findings of facts and conclusions of law to support his ruling.

The State appealed arguing (1) the witness was not an accomplice and (2) Ms. Ambrose did not suffer egregious harm. The Fourth Court reversed the trial court's ruling on the egregious harm issue and affirmed the conviction.

This petition challenges the appellate courts authority to substitute a trial courts factual findings and harm analysis with its own view of the evidence.

## STATEMENT OF PROCEDURAL HISTORY

After the trial judge granted Petitioner's Motion for a New Trial and issued written Findings of Facts and Conclusions of Law, the state appealed. On January 7, 2015 the court of appeals reversed the trial court's ruling and affirmed the conviction. *State v. Ambrose*, --- S.W.3d ----, 2015 WL 102194 (Tex.App.-San Antonio, 2015). The appellate court found that Petitioner did not suffer egregious harm. Justice Barnard issued a concurring opinion expressing "concern about the effect of the [egregious harm] standard on the trial court's authority to grant a new trial in a case such as this." *Id*. at *6. No request for rehearing was filed.

## GROUNDS FOR REVIEW

1. When a trial judge issues findings of fact and conclusions of law that find a defendant suffered egregious harm from unobjected to jury charge error, does applying the *Almanza* egregious harm standard on appellate review violate and conflict with Texas (*Ex parte Wheeler*, 203 S.W.3d 317 (Tex.Crim.App.,2006)) and United States Supreme Court (*Oregon v. Kennedy*, 456 U.S. 667 (1982)) precedent that a reviewing court must defer to a lower court's factual findings?

2

2. Under the egregious harm standard, does an appellate court violate Texas (*Ex parte Wheeler*, 203 S.W.3d 317 (Tex.Crim.App.,2006)) and United States Supreme Court (*Oregon v. Kennedy*, 456 U.S. 667 (1982) precedent when it ignores a trial court's factual findings and substitutes its own view of the evidence for that of the trial?

3. If the egregious harm standard does apply on direct review in this case, did the appellate court correctly apply the egregious harm standard when it only considered the testimony that supported the state's case and not "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole" as required by *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App., 1984)?

## ARGUMENT AND AUTHORITIES

## I.     Ground One and Ground Two

### (Grounds One and Two are briefed together)

### A.     Precedent Requires a Reviewing Court to Defer to a Lower Court's Factual Findings and Credibility Determinations

The Supreme Court has long held that a reviewing court must defer to a trial court's factual findings that are supported by the record. *Oregon v. Kennedy*, 456 U.S. 667, 677, 102 S.Ct. 2083, 2090 (1982) ["It seems entirely reasonable to expect, therefore, that appellate judges will continue to defer to the judgment of trial judges who are 'on the scene' in this area, and that they will not inexorably reach the same conclusion on a cold record at the appellate stage that they might if any one of them

3

had been sitting as a trial judge."] Texas also follows this rule as well *See Ex parte Wheeler*, 203 S.W.3d 317, 325 -326 (Tex.Crim.App.,2006).

In *Wheeler*, this Court held that it is "a matter of law" that "reviewing courts defer to the trial court's implied factual findings that are supported by the record, even when no witnesses testify and all of the evidence is submitted in written affidavits." *Wheeler* at 325-326 ["*See, e.g., Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004) (reviewing courts "must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party" even when all evidence is submitted by affidavit); *Manzi v. State,* 88 S.W.3d 240, 244 (Tex.Crim.App.2002) ( "Trial courts are the traditional finders of fact, and their determinations of historical fact are entitled to deference" even when the facts are in the form of an affidavit)."]

This Court also emphasized in *Wheeler* that trial judges who make factual determinations and who personally presided over the trial are "well-positioned to make credibility decisions." *Id. "*In *Peterson,* we stressed the importance of deferring to the trial court's assessment of the facts, including the prosecutor's state of mind. Here, as in other contexts, 'appellate courts review the facts in the light most favorable to the trial judge's ruling and should uphold it absent an abuse of discretion.'" *Wheeler* at 324.

Because the state's evidence in this case hinged entirely on testimony of its witnesses, without supporting physical evidence, the trial court's factual findings and application of the law to those facts hold great weight since he was in the best position to assess the demeanor of the witnesses and overall tone of the trial. *See Id.*

**B.    In applying the *Almanza* Harm Standard, the Appellate Court Violated Prior Precedent and Substituted the Trial Court's Factual Findings with its View of the Facts**

After laying out his factual findings and correctly citing the egregious harm standard, the trial court found that Petitioner suffered egregious harm. Specifically, the trial court concluded: "This Court was present for all the testimony in this case, has reviewed the legal arguments presented by the State and Defense, and has reviewed the law on this issue. This Court concludes that the failure to include the jury instruction on the accomplice witness rule caused Ms. Ambrose egregious harm, thus requiring a new trial." 1CR6-10[1].

Judge Harle also found: "Based on the presentation of the evidence at trial and this Court's view of the evidence at the time of trial, this Court asked his court administration attorney to prepare jury instructions on accomplice as a matter of law and as a matter of fact to be submitted to the jury." 1CR6-10. Thus, at the time of trial and before the law was submitted to jury, the trial judge was of the opinion that

---

[1] This clerk's record was erroneously filed in cause number 04-13-00576-CR on November 4, 2013 and contains 22 pages. The documents filed in  04-13-00576-CR were consolidated with this case by order of the Fourth Court on June 23, 2014,

the evidence required that the jury be given an accomplice witness instruction; when neither party requested it, he failed to *sua sponte* give the instruction.

The Fourth Court of Appeals applied the egregious harm standard in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.,1984) and conducted its own review of the evidence, without deferring to the trial court's findings of fact and credibility determinations, to conclude that Petitioner did not suffer egregious harm. Thus, by its opinion the appellate court disagreed with the trial judge, who was present for the trial testimony and was in the best position to gage the impact the testimony had on the jury, and substituted the trial judge's view of the evidence with its own. The appellate did so without finding that the trial judge's findings of facts were not supported by the record.

In a concurring opinion, Justice Barnard noted: "Based on the standard of review regarding egregious harm, I must concur with the majority. However, I write separately to express my concern about the effect of the standard on the trial court's authority to grant a new trial in a case such as this." *Ambrose* at *6. She also expressed concern that the "evidence in this case, even within a single witness's testimony, was contradictory." *Id*. "The trial court heard this testimony, as well as other contradictory testimony and was in a far better position to judge the impact on the jury and the case as a whole." *Id*. Ultimately, she concluded that she "fail[ed] to see how the trial court could ever grant a motion for new trial and have that ruling

upheld on appeal…I believe this standard of review completely usurps the trial court's authority when that court was in the best position to determine the effect of its decision not to *sua sponte* instruct the jury with regard to the accomplice-witness rule." *Id*. The appellate court also mistakenly believed that a defendant could *never* meet the difficult standard.

The egregious harm standard under *Almanza* as applied to a situation where a trial court made factual findings and was in the best position to determine whether the error caused egregious harm violates Texas and Supreme Court precedent. *Oregon v. Kennedy*, 456 U.S. 667, 677, 102 S.Ct. 2083, 2090 (1982); *Wheeler* at 325-326; *Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004).

Where a trial court grants a Motion for New Trial and applies the correct standard of harm to the jury charge error, its factual findings and credibility determinations, even the implied findings that are not expressly found, should not be substituted by the appellate court's review of the evidence. Here, Judge Harle made express findings of fact and also concluded that he was present for the testimony and presided over trial and in his assessment of the evidence Petitioner suffered egregious harm. By laying out the correct egregious harm standard, the trial court implicitly found that the corroborating evidence was "exceedingly weak—that is to say, evidence that, while it is legally sufficient to tend to connect, is nevertheless inherently unreliable, unbelievable, or dependent upon inferences from evidentiary

7

fact to ultimate fact that a jury might readily reject." *Casanova v. State,* 383 S.W.3d 530, 539 (Tex.Crim.App.2012).

The Fourth Court of Appeals' decision substitutes its own view of the evidence for the trial Court's and does not defer to his express and implicit factual findings. The Fourth Court's analysis of the evidence presented by the state found that the "non-accomplice corroborative evidence" was "relatively strong." *Ambrose* at \*4. This clearly departs from the trial court's express and implied factual findings.[2] Even Justice Barnard's concurring opinion found that "evidence in this case, even within a single witness's testimony, was contradictory." *Id.* at \*6. By substituting its own view of the evidence, the appellate court violated established precedent and failed to defer to the trial court's factual findings and credibility determinations.

The issue presented by Petitioner is distinguishable from this Court's holdings in *Igo v. State*, 210 S.W.3d 645 (Tex.Crim.App.,2006) and *State v. McKnight*, 213 S.W.3d 915 (Tex.Crim.App.,2007). In those cases the trial court denied the motion for a new trial on the issue of unobjected to jury charge error. Thus, even if the judge did make factual findings, they were not in favor of the appellant and the appellant would be asking the reviewing court to disagree with the trial judge's findings of facts and conclusions of law. In cases such as this, where the trial court does apply

---

[2] This statement is also not aligned with Justice Barnard's concurring opinion that found the "evidence in this case, even within a single witness's testimony, was contradictory." *Ambrose* at \*6.

the correct egregious harm standard and makes factual findings and conclusions of law that are supported by the record, a reviewing court should defer to the lower court's factual findings and only review for an abuse of discretion. This would allow a reviewing court to comport with U.S. and Texas precedent that a reviewing court must defer to a lower court's factual findings.

## II. Ground Three

In *Almanza*, this Court held that in order to assess the harm caused when the jury was not properly instructed, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171. The appellate court did not review the entire jury charge, state *all* of the evidence and all relevant information contained in the trial record as a whole. The court limited its focus of corroborating evidence to Large and Spellman's testimonies from the state witnesses and one sentence from Petitioner's testimony. *Ambrose* at *4-5. Furthermore, there was an articulable basis to disregard the non-accomplice evidence relied on to corroborate the accomplice.

In *Herron v. State*, 86 S.W.3d 621 (Tex.Crim.App.,2002), this Court explained that when "determining the strength of a particular item of non-accomplice evidence, we examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the crime." *Id*. at 632. "[T]he

reliability inquiry may be satisfied if: (1) there is non-accomplice evidence, and (2) there is no rational and articulable basis for disregarding the non-accomplice evidence or finding that it fails to connect the defendant to the offense." *Herron* at 633. Here, there was a "rational and articulable basis for disregarding the non-accomplice evidence" as evidenced by the trial court's findings of fact as well as Justice Barnard's concurring opinion that the "evidence in this case, even within a single witness's testimony, was contradictory." *Ambrose* at *6.

In its analysis, instead of reviewing the record as a whole, the court focused on the testimony of two non-eyewitnesses, Principal Large and Assistant Principal Spellman, and one sentence from Petitioner's testimony when she asked her class: "Does anybody want to show him what it feels like?" *Ambrose* at *4-5. The testimony from Large was specifically called into question by Justice Barnard:

> "For example, the principal testified Ambrose admitted she told her students to strike A.N., and some students did, yet the principal later claimed there was reason to doubt Ramirez's report. He also admitted sending Ambrose back into the classroom without disciplinary action. The trial court heard this testimony, as well as other contradictory testimony and was in a far better position to judge the impact on the jury and the case as a whole." *Ambrose* at *6, (J. Barnard concurring).

The appellate mentioned the "state of the jury charge", which included a general instruction that the witnesses were the sole judges of the witnesses credulity, but never conducted any analysis of the jury charge before concluding Petitioner did not suffer egregious harm. *Ambrose* at *5. The jury charge contained no language

emphasizing that Petitioner needed to be connected to the crime charged with non-accomplice evidence, therefore this issue weighs in favor of Petitioner. *Garcia v. State*, 2013 WL 4033890, 5 (Tex.App.-Corpus Christi, 2013) ["[N]othing in the jury charge emphasized to the jury the need to connect appellant to the crime with some non-accomplice evidence. *See Herron v. State,* 86 S.W.3d 621, 632 (Tex.Crim.App.2002) (en banc) (explaining that the purpose of the instruction is to inform the jury that it cannot use accomplice testimony unless some non-accomplice evidence connects the defendant to the crime). This factor weighs in favor of finding egregious harm."]

The court did look to the arguments of counsel, but only to find that the arguments focused on the credibility of the witnesses. *Ambrose* at *5. "The State argued there was no evidence any of them had an incentive to lie for each other." *Id*. This argument from the state is precisely the reason the legislature created the accomplice witness instruction – because accomplices often have reason to lie. *Blake v. State,* 971 S.W.2d 451, 451 (Tex.Crim.App.1998). Without Ramirez's statements to Large and Spellman and her testimony at trial, the state had no case. By emphasizing that its witnesses, including Ramirez, had no reason to lie for each other, this point weighs in favor of Petitioner suffering egregious harm as well.

Viewing the record as whole, the non-accomplice evidence failed to connect Petitioner to the offense charge, and this weighs in favor of egregious harm. In

evaluating Petitioner's own testimony, the appellate court erroneously found that Petitioner's statement "Does anybody want to show him what it feels like?..tended to connect her intent to the charged intent of subjecting A.N. to mistreatment by directing and allowing her students to strike him." *Ambrose* at *4. This testimony, even taken alone, does not express her desire for her students to hit A.N. And when taken in context of her whole testimony, this statement shows that she *intended* to teach A.N. a lesson and to show the child that bullying other students would cause the students to want to bully you back. 3RR118. Her *intent* was to show A.N. that you should not hit other students by showing him that others would think that it was okay to hit him back. This does not connect her to the criminal intent of intentionally subjecting the child to mistreatment.

All of the other witnesses' testimonies were contradictory, even in themselves, and they were not eye witnesses. Furthermore, the other witnesses based their testimony regarding the intent of Petitioner on information learned from Ramirez and this information cannot be used to corroborate Ramirez. *Archie v. State*, 340 S.W.3d 734 (Tex. Crim. App. 2011) ["An accomplice's out-of-court statement may not be used to corroborate him for purposes of art. 38.14."] A.N. was the only other person present in the classroom who testified for the State and his testimony, although he initially denied even knowing Petitioner or being mistreated in her classroom, was clearly inconsistent with any other witness' version of the

12

events.[3] 3RR55-58. Specifically, A.N.'s testimony, which was not even considered by the reviewing court. He testified that he did not know the difference between a truth and a lie. 3RR55. He did not know his own birthday. 3RR56. He testified that he did not know Petitioner. 3RR57. He did not remember a day when his teacher took him to Petitioner's class. *Id*. Only after the prosecutor reminded A.N. of what they had talked about earlier did he change his story. *Id*. He was then asked again whether he remembered being taken to another classroom and this time he said "Yes." He was then asked if he remembered what happened while in the classroom and he said "No." 3RR57-58. He did not know if a lady in the classroom where he was taken had asked him if he was being a bully. *Id*. He did not remember being called a bully in someone else's classroom. *Id*. He testified that he did remember a day when other kids hit him, but could not say what happened. 3RR58-59. A.N. finally said "Yes" when asked if he remembered "when a teacher put you – had you sit in the classroom and then had other students go hit you on the back?" 3RR58. But A.N. could not tell the court what happened. 3RR58-59. He denied that Ramirez took him to the other classroom and told the teacher that he was misbehaving. 3RR59. He did not remember anyone asking "what do we do with bullies?" 3RR58.

---

[3] In fact the Fourth Court's opinion did not even address A.N. or his brother's testimony as corroborating Ramirez. The appellate court only relied on the "non-accomplice corroboration from Principal Large and Vice Principal Spellmann, viewed together with Ambrose's admissions" to corroborate Ramirez. *Ambrose* at *5.

He finally agreed that he remembered other kids hitting him and when asked how many, A.N. testified "I think like 21." 3RR59. This is three times the number that Ramirez testified to.

Ramirez was the only adult who was present when A.N. was taken to Petitioner's class. The appellate court's analysis presupposes that the jury believed every witnesses testimony, however, without the accomplice witness instruction, the jury may have very easily only believed Ramirez's testimony and rested its decision solely on her testimony. This is essentially why the accomplice witness instruction is important – so that the jury will not base its decision on the words of an accomplice who has reason to lie. *See Blake v. State,* 971 S.W.2d 451, 451 (Tex.Crim.App.1998). [The importance of the accomplice-witness rule "reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie."] For these reasons, the court erred in its review of the corroborating evidence in this case.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Petitioner prays this Court grant this Petition for Discretionary Review, reverse the Fourth Court of Appeals' opinion affirming the conviction and remand Petitioner's case for a new trial.

Respectfully submitted:

__/s/Dayna L. Jones_____

14

Dayna L. Jones
Bar No. 24049450
LAW OFFICE OF DAYNA L. JONES
1800 McCullough Avenue
San Antonio, Texas 78212
(210)-255-8525– office
(210)-223-3248—fax
Daynaj33@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically sent to S. Patrick Ballantyne at sballantyne@bexar.org and to the State Prosecuting attorney *via* U.S. Mail at P. O. Box 13046 Austin, Texas 78711-3046 on March 8, 2015.

_/s/Dayna L. Jones_
DAYNA L. JONES

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.3(i)(1) and (3), I certify that, according to Microsoft Word's word count, this document contains **3,387** words.

_/s/Dayna L. Jones_
DAYNA L. JONES

# APPENDIX



# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00788-CR

The **STATE** of Texas

v.

Cynthia **AMBROSE**,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR10002
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice
Concurring Opinion by: Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  January 7, 2015

REVERSED AND REMANDED

The State appeals the trial court's order granting Cynthia Ambrose a new trial. The trial court granted Ambrose's motion on the basis that the trial court failed to *sua sponte* submit an accomplice-witness instruction to the jury and that its failure egregiously harmed Ambrose. The State challenges both components of the trial court's basis for granting the motion. Because we agree that the absence of an accomplice-witness instruction did not egregiously harm Ambrose, we reverse and remand the case to the trial court.

## BACKGROUND

In December 2012, Ambrose, a kindergarten teacher, was charged with Official Oppression by subjecting A.N., a child at her school, to mistreatment by directing and allowing other children to strike him. Ambrose pled not guilty.

### The State's Case

Barbara Ramirez, a kindergarten teacher at Salinas Elementary in the Judson Independent School District, testified that she and Ambrose each taught a separate kindergarten class at the school. Salinas Elementary had a "buddy system," which Ramirez explained was used by teachers to correct a child's behavioral problem before sending the child to the principal's office and to minimize the loss of a child's instructional time. Ramirez also testified that Judson ISD prohibited the use of corporal punishment to discipline students.

Ramirez further testified that in early May 2012, A.N. (a student in her class) had aggressively hit another child's back and "couldn't keep his hands to himself." She decided to use the buddy system and walked A.N. to Ambrose's classroom. Ramirez told Ambrose about A.N. bullying and hitting other students. Ambrose instructed A.N. to sit in a chair beside her desk and asked him why he was bullying other students. According to Ramirez, when A.N. did not respond, Ambrose said to the students in her class, "Come on, boys and girls, let's line up and let's bully [A.N.]." Ramirez stated that several students stood up and Ambrose again said, "Come on, let's hit him." The first few students rubbed or patted A.N. on the back, and according to Ramirez, Ambrose said, "Well, let's hit him harder." Ramirez testified that about seven students lined up and struck A.N. Ramirez stated that she left A.N. in Ambrose's classroom and later sent another student to bring A.N. back to her classroom.

Ramirez testified that about two weeks later she decided to report the incident when she heard Ambrose instruct a child to pinch another student. Ramirez reported both incidents to the

school's administration, specifically to Principal Jeffrey Large and Vice Principal Gerrie Spellmann.

During cross-examination, Ramirez admitted that she was given immunity to testify truthfully, and that her failure to timely report the incident was a criminal offense. She also admitted that she heard Ambrose tell the last student who struck A.N., "Okay, that's too hard, not that hard."

Large testified that Ramirez came to his office and described what had happened. He conferred with Spellmann, and they decided to investigate Ramirez's allegations. He testified that he spoke with Ambrose the next morning. According to Large's testimony, Ambrose told him that Ramirez had brought a student over to her classroom because the student was bullying others. He further testified that Ambrose "told us that she instructed the students to hit the other student but not hard. She said that I believe two or three students hit the student and then a fourth student hit too hard and then she stopped it immediately after that." He also said that he informed Ambrose that this conduct violated Judson ISD's policy against mistreatment of students.

On cross-examination, Large stated that it was probably true that there was reason to doubt Ramirez's report because two weeks had passed from the incident in Ambrose's classroom to the day when Ramirez reported it. He also said that because of Ambrose's reputation as a good teacher and disciplinarian, he had no reason to believe that Ambrose would do something like this. Large stated that he sent Ambrose back to her classroom after he met with her.

Spellmann provided additional testimony about Judson ISD's policy against corporal punishment. She also described the buddy system: "The buddy system is if a teacher has a child in their classroom and they feel like they need a break away, a time away then they buddy up with another classroom." The system could be used if a child is misbehaving or as a reward for a student. She explained that the buddy system is not used to have a teacher discipline a child. She also

testified to being present during Large's meeting with Ambrose. When Spellmann was asked what Ambrose had said, Spellmann reviewed a prior statement to refresh her memory about what exactly Ambrose had told her. Spellmann then testified, "[Ambrose] let us know that she had instructed her students to hit the student on the arm, but not too hard so that the student would know how it felt to be bullied." She testified that after her interviews with the students, it seemed to her that the students were told to strike A.N. On cross-examination, Spellmann stated that it was quite unbelievable that a person would wait two weeks to report this incident.

The State called two other teachers at Salinas Elementary to testify about what Ambrose told them in the teacher's lounge after her meeting with Large and Spellmann. Christine Wienstel testified that Ambrose had said "someone told on her about something." On cross-examination, Wienstel admitted that she was not sure if Ambrose had used those exact words. Sharon Hons testified that when she asked Ambrose why she seemed upset, Ambrose "just said someone had tattletaled on her." On cross-examination, Hons admitted that Ambrose did not say more about what had upset her.

The State also called A.N., who was seven years old at the time of trial, and A.N.'s two older brothers to testify. A.N. initially testified that he did not know the difference between a truth and a lie; he did not know when his birthday was; he did not know who Ambrose was; and he did not remember when Ramirez took him to see Ambrose or an incident when a teacher told other students to hit him. When A.N. was asked if he remembered his earlier talk with a prosecutor, A.N. said "wait," and then indicated that he was confused. He testified that he remembered when Ramirez took him "on the buddy system" to another teacher's class because he would not be quiet one day. He said he did not remember what happened in that classroom, but indicated that he remembered other kids hitting his back. When asked if he remembered how many kids hit him, he responded, "I think like 21." On cross-examination, A.N. said he did not tell his parents what had

- 4 -

happened. A.N.'s two older brothers each testified that A.N. had told them on a bus ride home one day that a teacher told other students to hit him. A.N.'s older brothers did not tell their parents because, as both testified, they did not believe A.N.

*Defense's Case*

Ambrose was the sole witness who testified in her defense at the guilt-innocence phase of trial. She denied instructing other students to hit another student. Ambrose testified that Ramirez had walked into her classroom, complaining that A.N. was kicking and punching other students. According to Ambrose, she asked Ramirez, "Do you want to scare [A.N.]? [Ramirez] said, Yes." Ambrose then testified that her class had heard the conversation and Ambrose asked them what they thought should happen. Ambrose stated, "[S]ome were saying time out, one of them did say he should get hit by the kids that he hit. So then I did say, Does anybody want to show him what it feels like?" According to Ambrose, before she knew it one of her students got up and hit A.N. Ambrose testified that there were a few more students who got up around A.N. and she told them to get away from A.N. "And it really did happen fast like Ms. Ramirez said," Ambrose explained. She concluded her direct examination with a denial that she intended for any student to hit A.N.

Ambrose also testified that she met with Large and Spellmann after the incident, and they told her to go back to her class and continue teaching. She also admitted to being present in the teacher's lounge, but denied saying someone had "tattletaled" on her. She explained at trial that she was mad that day because a friend of hers had been murdered by the friend's spouse, and Ambrose had learned that he would be attending the rosary.

On cross-examination, Ambrose was questioned about whether she thought the other witnesses had lied or perjured themselves. Her position was that Ramirez perjured herself about what was discussed and what had occurred in the classroom; Large and Spellmann perjured

themselves when they testified that she told them she instructed the students to hit A.N.; and that Wienstel had lied to the jury when testifying that Ambrose said someone tattled on her.

Ambrose admitted that she was a public servant, acting under color of state law in the classroom when Ramirez brought A.N. to her. She conceded that if a teacher subjected a student to discipline by corporal punishment, then it would constitute mistreating the student as well as an assault. Ambrose testified that she was aware of other teachers at Salinas Elementary and other schools having students hit other students, but denied that she did so.

### *Other Proceedings*

At the charge conference, there was no objection to the absence of an accomplice-witness instruction. Following closing arguments, the court recessed for forty-two minutes before the jury reached a verdict. The jury found Ambrose guilty. Ambrose elected to be sentenced by the court, which sentenced her to one year's confinement but suspended the sentence and placed her on community supervision. Ambrose hired new counsel to file a motion for new trial, arguing that she suffered egregious harm because the trial court failed to *sua sponte* instruct the jury on the accomplice-witness rule.

The trial court granted Ambrose's motion solely on the ground of charge error and denied the motion on the other grounds. In the trial court's findings of fact and conclusions of law, it concluded that Ramirez was an accomplice as a matter of law (and alternatively there was at least a fact issue regarding her status as an accomplice) and that the omission of an accomplice-witness instruction egregiously harmed Ambrose. The State appealed the trial court's order.

### STANDARD OF REVIEW & APPLICABLE LAW

A trial court must instruct the jury on the law applicable to the case. *Zamora v. State*, 411 S.W.3d 504, 513 (Tex. Crim. App. 2013). Article 38.14 of the Code of Criminal Procedure provides, "A conviction cannot be had upon the testimony of an accomplice unless corroborated

by other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). The rule "does not require the non-accomplice evidence to be sufficient in itself to establish the accused's guilt beyond a reasonable doubt." *Perez v. State*, 437 S.W.3d 610, 616 (Tex. App.—San Antonio 2014, no pet.). When an accomplice witness's testimony implicates the defendant in the charged offense, the accomplice-witness instruction is law applicable to the case, and the trial court must instruct the jury on the rule even without a request. *Zamora*, 411 S.W.3d at 513-14.

In *State v. McKnight*, 213 S.W.3d 915, 916 (Tex. Crim. App. 2007) (per curiam), the Court of Criminal Appeals required courts of appeal to review a trial court's order granting a new trial for charge error under the harm standards of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984). We no longer review a trial court's order granting a new trial under the traditional abuse-of-discretion standard. *State v. Sanchez*, 393 S.W.3d 798, 802 (Tex. App.—El Paso 2012, pet. ref'd) (citing *McKnight*, 213 S.W.3d at 915-16). In effect, *McKnight*'s holding requires a trial court to apply *Almanza*'s harm standards when ordering a new trial based on the trial court's failure to instruct the jury on the law applicable to the case. *See id.*

The degree of harm *Almanza* requires depends on whether the defendant timely objected to the absence of a proper jury instruction. *Id.* at 802. When the defendant preserves error at trial by timely objection to the absence of an accomplice-witness instruction, the record must establish only "some harm" to obtain reversal. *Id.* When, as here, there is no timely objection to the absence of an accomplice-witness instruction, we may affirm a trial court's order granting a new trial only if the record shows the defendant suffered egregious harm, which is when the omission of the instruction deprived the defendant of a fair and impartial trial. *Almanza*, 686 S.W.2d at 171. The egregious harm standard "is a difficult standard to meet," *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013), and usually requires corroborating evidence to be weaker than the "some

harm" standard. *See Herron v. State*, 86 S.W.3d 621, 633 (Tex. Crim. App. 2002) ("Obviously, all other things being equal, the non-accomplice evidence would have to be stronger than what is required in the egregious harm context."). *Almanza*'s higher, egregious harm standard is applied to further "the policy of encouraging the timely correction of errors, which is embodied both in Article 36.19 and in our own rules of appellate procedure." *Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006).

Egregious harm "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Fulcher v. State*, 274 S.W.3d 713, 716 (Tex. App.— San Antonio 2008, pet. ref'd). In the context of failing to instruct the jury on the accomplice-witness rule, there is egregious harm when the corroborating evidence is "exceedingly weak—that is to say, evidence that, while it is legally sufficient to tend to connect, is nevertheless inherently unreliable, unbelievable, or dependent upon inferences from evidentiary fact to ultimate fact that a jury might readily reject." *Casanova v. State*, 383 S.W.3d 530, 539 (Tex. Crim. App. 2012). We must "inquire whether the jurors would have found the corroborating evidence so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). In assessing the harm caused by failing to properly instruct the jury, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

## ANALYSIS

We assume without deciding that Ramirez was an accomplice, and consider whether the corroborating evidence—viewed in light of the jury charge, state of the evidence, arguments of counsel, and other considerations—was so exceedingly weak that Ambrose was deprived of a fair

and impartial trial. *See* TEX. R. APP. P. 47.1 (requiring us to hand down an opinion as brief as practicable while addressing issues necessary to our final disposition).

Ambrose agreed during her testimony that she was a public servant acting under the color of state law and that subjecting a child to corporal punishment through other students would constitute mistreatment. Thus, the only contested element of the charged offense was whether Ambrose intended to subject A.N. to being struck by other students. We therefore focus our analysis on evidence "tending to connect" Ambrose's intent to the intent alleged in the charge—that Ambrose intended that other students strike A.N. *Cf. Casanova*, 383 S.W.3d at 532-40 (considering corroborative evidence pertaining to the disputed element of intent in a drug possession case).

The non-accomplice corroborative evidence in the record is relatively strong. Initially, Ambrose admitted to saying something that prompted students in her classroom to get up and strike A.N. According to Ambrose, after one of her students suggested other students hit A.N., she asked her class, "Does anybody want to show him what it feels like?" Although Ambrose denied explicitly directing her students to hit A.N., her own testimony tended to connect her intent to the charged intent of subjecting A.N. to mistreatment by directing and allowing her students to strike him. Ambrose's own admissions tending to connect herself to the charged offense are not "inherently unreliable, unbelievable, or dependent upon inferences from evidentiary fact to ultimate fact." *See id.*

Large's and Spellmann's respective testimony also tended to connect Ambrose to the charged offense. When Large and Spellmann met with Ambrose to ask her about Ramirez's allegations, Ambrose admitted to instructing her students to hit A.N. Ambrose argues their testimony was "unbelievable" because each testified they thought what had happened in Ambrose's classroom was "unbelievable." This is mere equivocation; neither Large nor Spellmann

testified they actually did not believe Ambrose when she admitted to instructing students to hit A.N. Although Large and Spellmann sent Ambrose back to her classroom to teach, this does not render their testimony inherently unreliable. Evidence supported Ambrose was unlikely to return to her classroom and again subject her students to corporal punishment. Ambrose had a reputation for being a good teacher and good disciplinarian up until Ramirez's report, and Large admonished Ambrose during their meeting that Ambrose's admitted conduct violated Judson ISD policy.

The jury charge and the State's arguments emphasized the strength of the corroborating evidence and the weakness of Ambrose's contradictory testimony. The State's opening statement highlighted the expected inconsistency between Ambrose's likely testimony at trial and her prior statement to Large and Spellmann. No opening statement was given for the defense. After both sides rested their respective cases, the jurors were instructed that they were the exclusive judges of the witnesses' credibility and of the weight to be given to their testimony and could return a guilty verdict only if the State proved Ambrose committed the offense beyond a reasonable doubt.

Both sides' closing arguments focused on the credibility of the witnesses. The State argued there was no evidence any of them had an incentive to lie for each other. The State's closing argument emphasized, "Literally all of our witnesses corroborate each other. There was no corroboration on the defense's part." The defense focused on the inconsistent conduct of Ramirez, Large, and Spellmann; Ramirez waited two weeks to report Ambrose and Large and Spellmann sent Ambrose back to class after they met with her. The defense called Ramirez a "psychopathic liar" and suggested Large and Spellmann had a motive to falsely inculpate Ambrose to hold someone accountable. The jury returned a guilty verdict after only a forty-two minute recess. Thus, the evidence and other parts of the record support that the State's case would not have been rendered clearly and significantly less persuasive had the jury been instructed on the accomplice-witness rule.

Although Ambrose contends the credibility of Ramirez's testimony might have been impacted by the State granting her immunity to testify, and the State believed her testimony was "necessary" to a conviction, a proper harm analysis requires us to disregard Ramirez's testimony in determining whether Ambrose suffered egregious harm. *See De La Rosa v. State*, 919 S.W.2d 791, 796 (Tex. App.—San Antonio 1996, pet. ref'd) (noting that *Almanza*'s harm standard in accomplice-witness cases requires a reviewing court to disregard the accomplice testimony and consider only non-accomplice corroboration). These contentions do not show that the non-accomplice corroboration by the State's witnesses was inherently unreliable or unbelievable.

## CONCLUSION

We conclude that the sum of the non-accomplice corroboration from Principal Large and Vice Principal Spellmann, viewed together with Ambrose's admissions that she wanted to teach A.N. not to be a bully and had said something to her class that caused A.N. to be struck by other students, was not exceedingly weak in tending to connect Ambrose's actual intent to the requisite intent of subjecting A.N. to mistreatment. The inclusion of an accomplice-witness instruction would not have rendered the State's case clearly and significantly less persuasive so as to deprive Ambrose of a fair and impartial trial. Therefore, we conclude Ambrose did not suffer egregious harm and hold the trial court erred in granting Ambrose's motion for new trial. Accordingly, we reverse the trial court's order granting a new trial, and we remand this case for further proceedings.

Luz Elena D. Chapa, Justice

PUBLISH



## Fourth Court of Appeals
### San Antonio, Texas

#### CONCURRING OPINION

No. 04-13-00788-CR

The **STATE** of Texas,
Appellant

v.

Cynthia **AMBROSE**,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR10002
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice
Concurring Opinion by: Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  January 7, 2015

Based on the standard of review regarding egregious harm, I must concur with the majority. However, I write separately to express my concern about the effect of the standard on the trial court's authority to grant a new trial in a case such as this.

The evidence in this case, even within a single witness's testimony, was contradictory. For example, the principal testified Ambrose admitted she told her students to strike A.N., and some students did, yet the principal later claimed there was reason to doubt Ramirez's report. He also admitted sending Ambrose back into the classroom without disciplinary action. The trial court heard this testimony, as well as other contradictory testimony and was in a far better position to

judge the impact on the jury and the case as a whole. Nevertheless, because the egregious standard requires the evidence to be "exceedingly weak," "inherently unreliable," "unbelievable," or "so unconvincing" as to render the case for conviction "clearly and significantly less persuasive," before we can uphold the trial court's decision to grant a new trial, I fail to see how the trial court could ever grant a motion for new trial and have that ruling upheld on appeal. *Casanova v. State*, 383 S.W.3d 530, 539 (Tex. Crim. App. 2012); *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1992). I believe this standard of review completely usurps the trial court's authority when that court was in the best position to determine the effect of its decision not to *sua sponte* instruct the jury with regard to the accomplice-witness rule. Accordingly, I concur.

Marialyn Barnard, Justice

Publish